**Richard FILIPPI, Appellant**

v.

**The CITY OF ERIE Pennsylvania, United National Group, Diamond State Insurance Company, Insurance Management Company, and Swett & Crawford.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 27, 2009.

Decided March 6, 2009.

Eric S. Yonkin, Erie, for appellant.

Gregory A. Karle, Erie, for appellee, City of Erie.

BEFORE: SMITH–RIBNER, Judge, BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Richard Filippi (Filippi) appeals, *pro se*, from an order of the Court of Common Pleas of Erie County (trial court) which granted the preliminary objections of the City of Erie Pennsylvania (City), the United National Group (Group), Diamond State Insurance Company (Diamond), Insurance Management Company (Insurance) and Swett & Crawford (S & C)(collectively, Appellees) and dismissed Filippi's case against each Appellee, as Group, Diamond,

Insurance and S & C do not owe a legal duty to Filippi because the City does not have a legal duty to obtain insurance coverage for an elected official who is accused of committing a crime and as Filippi failed to state a claim for unjust enrichment against the City. We affirm.

In 2002, as the Mayor of the City, Filippi was attempting to redevelop an unused industrial parcel previously operated by International Paper (Site). Filippi entered into negotiations with several possible developers. In March of 2003, Aiko Acquisitions, LLC (Aiko) formed a real estate development company for the purpose of acquiring, renovating and leasing for profit, blighted residential and commercial properties in the City, as well as Erie County. Filippi invested in Aiko with a non-recourse loan of $8,000.00 and acquired a 5% interest. Filippi did not disclose the investment in Aiko on his financial disclosure statement as he felt it was not required under the Public Official and Employee Ethics Act (Act), 65 Pa.C.S. §§ 1101–1113. Aiko purchased four properties in the vicinity of the Site.

In 2004, the negotiations with one of the prospective developers for the Site broke down. Filippi was then accused of conducting the negotiations and using the powers of his office not for the public good but rather for his own personal gain. Several members of City council actively sought and promoted the institution of criminal proceedings against Filippi. In December of 2004, the Attorney General presented facts to a grand jury which indicted Filippi on several felony and misdemeanor charges, including conflict of interest, accepting improper influence, criminal conspiracy, financial interest statement violations, unsworn falsification to authorities and speculating or wagering on official action. The Commonwealth alleged that Filippi was using confidential information acquired as a result of his negotiations with prospective developers of the Site to further his own private interests, that the actions directed by Filippi to redevelop the vacant property were performed not for the public benefit or the lawful discharge of his official duties, but rather were done in furtherance of his private pecuniary gain.

In 2006, during Filippi's two-week trial, Filippi established that there was never any confidential information regarding the development of the Site and the negotiations with developers. Further, the Commonwealth's witness was determined to be not credible. Thus, Filippi and two co-defendants were acquitted on all criminal charges. Filippi spent approximately $370,000.00 of his own money defending the actions that he allegedly undertook as Mayor of the City.

On December 7, 2006, Filippi filed an action against the City, its insurance carriers and agents. On March 19, 2007, Filippi filed his complaint against the City, and such complaint was amended on April 26, 2007. Thereafter, each Appellee filed preliminary objections to the original and amended complaint. After oral argument, the trial court granted all of the preliminary objections of Appellees by order dated August 6, 2007. The trial court determined that Filippi's "successful defense against a felony criminal indictment did not confer any legal, financial or other benefit unto the City of Erie" and therefore, "[a]s a matter of law, [Filippi] has failed to state a claim for unjust enrichment against the City of Erie." Trial Court Order, August 6, 2007, at 2. On September 5, 2007, Filippi filed a notice of appeal and a statement of matters complained of on appeal pursuant to Pa. R.A.P. 1925(b). Filippi has limited his appeal to his claim against the City.

Filippi contends that the trial court erred in holding, as a matter of law and prior to any discovery being conducted, that he has not stated a legally recognizable claim of unjust enrichment.

In ruling on preliminary objections, this Court must accept as true all well-pleaded material allegations in the complaint, as well as all inferences which may reasonably be deduced therefrom. *Hawks by Hawks v. Livermore*, 157 Pa.Cmwlth. 243, 629 A.2d 270 (1993). This court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Id.* In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery and any doubt should be resolved by a refusal to sustain them. *Id.*

Filippi contends that he has pled the requisite facts to establish that his claim for restitution under unjust enrichment received by the City has merit. Filippi states that he has conferred many benefits upon the City, that at all times he was acting within his official duties as Mayor of the City in working to redevelop the Site. Filippi further states that he has endured tremendous personal economic loss in having to defend his actions from alleged and ultimately unproven criminal charges that pertained to the misuse of his public office and the Site redevelopment. The City has not reimbursed Filippi for his legal expenses in defending his actions as Mayor and for executing his official duties in good faith for the public good. Filippi believes this is a question for a jury and should not have been dismissed.

Count one of the amended complaint states that the City owes Filippi a duty of restitution under the equitable principle of "unjust enrichment." Unjust enrichment is shown by "benefits conferred on defendant by plaintiff, apprecia-

tion of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Wiernik v. PHH U.S. Mortgage Corp.*, 736 A.2d 616, 622 (Pa.Super.1999), *appeal denied*, 561 Pa. 700, 751 A.2d 193 (2000). The application of this doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched. *State Farm Mutual Automobile Insurance Company v. Jim Bowe & Sons, Inc.*, 372 Pa.Super. 186, 539 A.2d 391, 393 (1988), citing *Myers–Macomber Engineers v. M.L.W. Construction Corp. & HNC Mortgage and Realty Investors*, 271 Pa.Super. 484, 414 A.2d 357 (1979).

Filippi relies on *Schenck v. K.E. David*, 446 Pa.Super. 94, 666 A.2d 327 (1995), to support his case. In *Schenck*, K.E. David, LTD., and Kenneth David (appellants) appealed from an entry of judgment following a nonjury verdict in favor of Peter F. Schenck and Elizabeth K. Ainslie, of the law firm Ainslie & Schenck (appellees). Appellees represented appellants in a federal criminal antitrust trial, at which appellants were acquitted of all charges. Subsequently, appellees represented appellants in civil antitrust proceedings brought by various parties, one of which was the Commonwealth of Pennsylvania. The Commonwealth sought damages in excess of $225,000.00. Appellees negotiated a settlement agreement whereby appellants were obligated to pay only $82,000.00 to the Commonwealth. The settlement included an agreement by the Commonwealth that it would attempt to collect $32,000.00 of the settlement amount from another settling defendant. Appellants then paid $40,000.00 to the Commonwealth

and their insurance company paid another $10,000.00, leaving only the $32,000.00 outstanding. However, the other settling defendant died and his company became insolvent. Thereafter, the Commonwealth notified appellees that appellants were responsible for the debt. Without notifying appellants, appellees advanced the $32,000.00 out of the law firm funds. Appellants then refused to repay appellees, resulting in litigation.

The trial court found in favor of appellees on the basis that appellants had been unjustly enriched. Appellants appealed to the Superior Court, claiming that the trial court erred in applying the doctrine of unjust enrichment to the facts of this case. The Superior Court affirmed the trial court and determined that the appellees paid the debt of appellants with the reasonable expectation that it would be reimbursed and with the belief that it had the implied authority to pay such debt on behalf of appellants. The Superior Court stated that "it would be unconscionable and unjust to allow appellants to retain the benefit of appellees' payment to the Commonwealth." *Schenck*, 666 A.2d at 329.

Filippi contends that the benefits conferred and retained by the City are the actions that he took to redevelop the Site into a useful economic asset after International Paper left the area. Filippi engaged contractors, hired professionals to assist in the negotiations with potential developers, lobbied state officials for funding the redevelopment, and directly negotiated with potential developers of the Site. Amended Complaint at 5–7.[1]

However, *Schenck* is distinguishable, as it involved a professional relationship between a client and his attorney. The attorney, on his client's behalf, paid the client's debt, thus conferring a benefit to the client. Filippi conferred no such benefit unto the City. Filippi entered into a clandestine relationship with Aiko who intended to acquire real estate in the vicinity of the Site. Aiko was a private endeavor in which Filippi was involved. Personally investing in Aiko was not part of the Mayor's official duties.

Filippi avers in his Complaint that he initially sought assistance for his legal defense through the City Solicitor's office but, in his brief, adds that he was told that the Solicitor's office would not provide such assistance, so he was forced to obtain his own counsel. Filippi contends that at all relevant times he was acting as an agent or officer of the City with the best interest of the City in mind. Filippi contends that the trial court erred in focusing solely on the notion that he was not tried as a public official, but rather for conduct he performed as a private citizen and therefore was outside the scope of his official employment.

Filippi relies on *In re Birmingham Township*, 142 Pa.Cmwlth. 317, 597 A.2d 253 (1991), in support of his contention that the courts are leaning toward reimbursing public officials for alleged criminal acts performed within the scope of their duties. *Birmingham* was a petition to

1. Filippi contends in his brief (the record is limited to the Complaint and P.O.'s) that the only reason for the criminal charges was that Mr. Gregory Rubino, one of the main prospective developers who purported to represent the interests of Presque Isle Downs, Inc. (Presque Isle) and Mountaineer Racing (Mountaineer), companies which claimed to be seeking a location in Erie County, told the Commonwealth's grand jury that throughout his negotiations with Filippi that Filippi was attempting to use the Site for his own personal gain with inside knowledge gleaned from confidential information and committed extortion-like practices against Presque Isle and Mountaineer. This resulted in the indictment and prosecution of Filippi on the allegations of misusing the public office.

deny defense attorney fees in a recall action by electors to have two supervisors removed from office. Two of the fourteen paragraphs in the complaint were of a criminal nature. We followed the rule that public officials in a recall action are ordinarily entitled to a defense paid out of public funds because township officials should not be forced out of office in order to avoid the substantial legal costs of defending their official actions, except when the conduct is of a criminal nature, the local government should not pay for the defense. Since there was only *allegata* of criminal conduct with absolutely no *probata*, however, the *Birmingham* supervisors were held entitled to a public defense. "If the official is denied a public defense and it is later judicially determined that substantial evidence did not in fact exist to support the allegation, the official is entitled to reimbursement from the local government for attorney fees and costs expended in defending that allegation." *Birmingham*, 597 A.2d at 258.

■ Again, *Birmingham* is distinguishable from the current controversy. The court in *Birmingham* permitted public payment of the supervisors' recall defense because at the hearing for reconsideration the "[e]lectors did not present any discovery or witness testimony which would give credence to the allegations nor did they present any evidence that the supervisors have been indicted or that criminal charges have been filed or are pending." *Id.* at 258. As Filippi was held over for trial on criminal charges, *Birmingham* would not obligate the City to pay for Filippi's legal defense as evidence of criminal conduct had been established. A public official indicted and accused of a crime is not performing in an official capacity and is not entitled to a publicly paid criminal defense.

Filippi further relies upon *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289 (1994), in support of reimbursing public officials charged with criminal acts. In *Renk*, the Supreme Court set forth that "[t]he purpose of the indemnification provisions '... is to permit local agency employees to perform their "official duties" without fear of personal liability, whether pursuant to state or federal law, so long as the conduct is performed during the course of their employment.'" 537 Pa. at 73, 641 A.2d at 292 (citations omitted).

However, the current state of the law does not allow a cause of action for recovery of attorney's fees by a public official for a criminal prosecution.[2] In *Roofner's Appeal*, 81 Pa.Super. 482 (1923), three road supervisors were indicted and tried upon the charge of unlawfully neglecting and refusing to keep fit for public travel a certain public township road which became a public nuisance. Two were acquitted, one was convicted. The auditors allowed the supervisors a credit for paying their attorney's defense fee from the road funds of the township. In *Roofner*, the Superior Court, in affirming the trial court's disallowing the credit and surcharging the supervisors for the amount of their attorney's fee that was paid out of public funds, stated:

---

2. In *Renk*, a police officer was found liable in a civil suit for assault and battery, paid the judgment and then filed suit for indemnification under the Political Tort Claims Act from the municipality. The Supreme Court held that a police officer may be so indemnified absent a judicial determination that he was found guilty of willful misconduct. In *Renk*,

it was unclear whether the jury in the federal action found that the police officer intentionally used excessive force to make the arrest or only if he intentionally used force and also, it was not clear whether the officer made the arrest knowing he lacked probable cause or only that he lacked probable cause to make the arrest.

From time out of mind in all governments where the common law prevails, a person prosecuted for crime has been compelled to pay his own expenses, when he had the means to do so. Counsel fees and other expenses incurred by public officials in defending criminal charges, or charges of official misconduct, are incurred for a private purpose and cannot, in the absence of statutory provision therefore be paid from public funds.... It is not the duty of the public to defend or aid in the defense of one charged with official misconduct. When one accepts a public office he assumes the risk of defending himself even against unfounded accusations at his own expense.

*Id.* at 485.

Recently, our court discussed the issue of reimbursement of attorney's fees for a county district attorney in *Pettit v. Michael Namie, Controller of Washington County,* 931 A.2d 790 (Pa.Cmwlth.2007). In *Pettit,* the district attorney, John Pettit, was sued for violating a citizen's civil rights by depriving him of the use of his property that had been seized during an arrest and subsequently forfeited pursuant to Section 6801 of the Judicial Code, 42 Pa.C.S. § 6801, commonly known as the Controlled Substances Forfeiture Act. Pettit failed to comply with a court order requiring him to return the property. Pettit was found liable, paid the judgment and then filed an action in mandamus and for declaratory judgment against the county commissioners and controller demanding indemnification for payment of the judgment entered against him and attorney's fees, costs and expenses incurred in defending his official actions during post-trial proceedings during which the county withdrew its representation. This court held that although reckless conduct may have been proven, the county failed to prove the element of willful misconduct

which is necessary to disqualify an employee acting within the scope of employment from receiving indemnification.

*Pettit* is distinguishable from the present controversy, in that Filippi is not claiming indemnification under the Tort Claims Act or any other statute but is proceeding solely on the common law theory of unjust enrichment. Further, Filippi was not acting within his official capacity as Mayor when he personally invested in Aiko and failed to disclose such information. In addition, Filippi was not prosecuted as the Mayor or for actions within the scope of his employment, but for his actions for his own benefit.

Filippi argues that he pled sufficient facts to establish that he has a prima facie case for restitution under principles of unjust enrichment, which requires a fact-intensive inquiry prior to a determination. *Schenck.* However, Filippi, as a public official, is not entitled to recoup from the municipality he served, attorney fees incurred in the defense of a criminal prosecution for misuse of his office. Failure to pay the costs of defense of a criminal prosecution resulting in an acquittal of a public officer does not rise to the level of unjust enrichment to the City.

There is no case, statute or code cited by Filippi as authority to reimburse a public official for defense costs when he was acquitted of criminal charges relating to his public office. The *Birmingham* and *Renk* cases are based on the Municipal Code and Political Subdivision Tort Claims Act, respectively, as authority for the payment and/or indemnification for defense counsel fees and even there, they refer to limitations when there is substantial evidence of criminal conduct. Filippi predicates his entire claim on a common law theory of unjust enrichment. Unfortunately, Filippi was not indicted for promot-

ing the redevelopment of the site City Council approved, for which it also appropriated funds and for which the City received a benefit.

Filippi was indicted for his personal financial relationship and dealings with the developer Aiko, with whom he had a financial interest which lead to his alleged conflict of interest and use of inside information for financial gain, etc. Although there was insufficient evidence to satisfy the jury of the criminal burden of proof that Filippi committed a crime, his venture with Aiko and his legal defense conferred no benefit on the City. To the extent the Site development efforts were benefits conferred on the City, they were part of Filippi's duties as Mayor, for which he received a salary.

Filippi has not, therefore, presented a legally recognizable claim for unjust enrichment and the law will not permit recovery. The trial court was, therefore, without error in sustaining the preliminary objections of the City and dismissing Filippi's amended Complaint with prejudice.

Accordingly, we affirm the trial court's order.

Judge SMITH–RIBNER dissents.

### *O R D E R*

AND NOW, this 6th day of March, 2009, the order of the Court of Common Pleas of Erie County which granted the preliminary objections of the City of Erie Pennsylvania and dismissed the Amended Complaint of Richard Filippi is affirmed.