# Rizzo v. MSA, Inc.

234

C.P. of Lackawanna County, no. 06 CV 3330.

*Samuel M. Sanguedolce,* for plaintiff.
*Michael R Mey,* for defendant.

NEALON, *J.,* November 5, 2010—Following a non-jury verdict in favor of plaintiff Bryan Rizzo ("Rizzo") on his direct claim and in favor of defendant MSA, Inc. ("MSA") on its counterclaim, both parties filed motions for post-trial relief seeking judgment in their favor with respect to the other party's verdict against them. The credible evidence at trial established that: (1) the parties mutually agreed to extend the original completion date for their real estate transaction due to construction delays attributable to a third party contractor; (2) Rizzo breached the parties' amended agreement by refusing to close on the revised settlement date; (3) MSA suffered consequential damages as a result of Rizzo's breach; (4) Rizzo paid for certain extra-contractual improvements to the property which enhanced its value for later sale by MSA; and (5) it was inequitable for MSA to retain the benefit of those enhancements without payment of value to Rizzo. As a consequence, neither party has demonstrated the right to judgment notwithstanding the verdicts entered against them and their requests for post-trial relief under Pa.

R.C.P. 227.1(a)(2) will be denied.

## I. PROCEDURAL HISTORY

Rizzo commenced this litigation against MSA on July 10, 2006, after Rizzo declined to consummate the parties' real estate transaction and MSA refused to refund Rizzo's deposit or reimburse him for extra-contractual work that Rizzo financed. A certificate of readiness was filed on January 20, 2010 and following a status conference before the undersigned on February 25, 2010, an order was issued scheduling this matter for a non-jury trial on June 3, 2010. (Docket entry nos. 1, 39-40) At the request of counsel for Rizzo, the trial was later postponed to July 7, 2010. (*Id.*, No. 43) During the bench trial on that date, testimony was received from Rizzo and MSA's President, Justin Sulla, Esquire, and various exhibits were admitted into evidence.

Based upon the credible evidence presented during the non-jury trial, a verdict in the amount of $42,345.04 was entered in favor of Rizzo and against MSA on his unjust enrichment claim only, representing his unrefunded down payment and the value of the extra-contractual improvements to the subject property that were provided by Rizzo. With regard to MSA's counterclaim against Rizzo, a verdict was entered in favor of MSA in the sum of $37,691.23 for its lost profit and other consequential damages related to Rizzo's failure to consummate the parties' agreement. The contractual damages to be paid to MSA were ordered to "bear interest at the legal rate of 6 percent per annum under 41 P.S. §202 from the date that payment became due." (*Id.*, No. 48) Therefore, not

including MSA's accrued statutory interest, the non-jury verdict yielded a net award of $4,653.81 ($42,345.04 less $37,691.23) in favor of Rizzo.

On July 19, 2010, Rizzo filed a motion for post-trial relief requesting the entry of judgment in his favor with respect to MSA's counterclaim. (*Id.*, No. 49) On July 20, 2010, an order was issued directing Rizzo to file his supporting brief by no later than August 24, 2010 and requiring MSA to submit its opposing brief 15 days thereafter on September 8, 2010. In addition, the order of July 20, 2010 scheduled oral argument on the post-trial motion for September 22, 2010 at 1:30 PM. (*Id.*, No. 50)

On July 26, 2010, MSA filed its answer to Rizzo's post-trial motion and also filed its own motion for post-trial relief seeking judgment in its favor with regard to Rizzo's unjust enrichment verdict. (*Id.*, Nos. 51-52) Rizzo filed an answer to MSA's post-trial motion on August 5, 2010, (*Id.*, No. 53), but did not file his supporting brief on August 24, 2010 as required by the order of July 20, 2010. Rizzo did not submit his supporting brief until September 17, 2010, 24 days after the court imposed deadline of August 24, 2010. (*Id.*, No. 56) In the interim, MSA filed its brief in support of its post-trial motions on August 25, 2010. (*Id.*, No. 55)

Although the undersigned and counsel for MSA were present for the scheduled oral argument on September 22, 2010, Rizzo's counsel did not appear for that oral argument. MSA filed its opposing brief on September 28, 2010, within 15 days of Rizzo's belated submission of his brief ((*Id.*, No. 57) At that time, the parties' post-trial motions became ripe for disposition.

## II. FACTUAL BACKGROUND

In 2005, MSA was engaged in the business of purchasing real estate, constructing residential homes on that land, and thereafter selling the newly constructed residences and accompanying land to third parties. (Transcript of Proceedings (T. P.) on 7/7/2010, pp. 20-21) At that time, MSA regularly contracted with KAB construction ("KAB") to build homes on MSA's properties for eventual sale to third parties. (*Id.*, pp. 22-25) On September 23, 2005, MSA entered into an agreement of sale with Rizzo by virtue of which Rizzo agreed to purchase a Jefferson Township property upon which a residence would be constructed by KAB and sold to Rizzo for the sum of $387,000.00. (Joint pre-trial order ("JPO") dated 7/2/10, pp. 1,9; T. P. 7/7/10, pp. 31-32)

Under the terms of the parties' agreement, Rizzo made a down payment of $5,000.00 and the closing was scheduled to be conducted on January 31, 2006. (JPO, pp. 2,9; plaintiff's exhibit No. 1) Paragraph 5 of the agreement notes that "time is of the essence" and provides that the settlement date of January 31, 2006 could "only be extended by mutual written agreement of the parties." (T. P. 7/7/10, pp. 32-38; plaintiff's exhibit No. 1, p. 2 of 22) The agreement also contains a mortgage contingency clause making the sale contingent upon Rizzo obtaining mortgage financing of $309,600.00 for a thirty year term at an interest rate not to exceed 6.5 percent. (Plaintiff's exhibit No. 1, p. 2 of 22; JPO, pp. 2, 9) The mortgage contingency provision obligated Rizzo to "make a completed, written mortgage application for the mortgage terms stated above" within ten days of September 23, 2005. (Plaintiff's exhibit No. 1, p. 2 of 22)

Furthermore, paragraph 6(C) states that if Rizzo "fail[ed] to cooperate in good faith in processing the mortgage loan application" and did not secure the requisite mortgage loan commitment as a result, Rizzo would be deemed "in default of this agreement." (*Id.*) Finally, the mortgage contingency clause provides that if Rizzo did not secure a mortgage commitment by November 30, 2005, the parties "agree[d] to extend the mortgage commitment date until [MSA] terminates this agreement by written notice to [Rizzo]." (*Id.*)

In anticipation of a closing date on or before January 31, 2006, MSA retained KAB to build Rizzo's home. (JPO, pp. 2, 9; T. P. 7/7/10, pp. 55, 66) As per the parties' understanding, Rizzo dealt directly with KAB relative to any changes or additions to the construction contract specifications. (JPO, pp. 2,9) In that regard, Rizzo paid KAB $34,500.00 for a concrete driveway, landscaping, a concrete sidewalk, hardwood flooring, and kitchen cabinets that were not included in the MSA-Rizzo contract. (Docket entry no. 48; JPO, pp. 4, 10) Additionally, Rizzo purchased $2,845.09 worth of appliances which were installed in the Jefferson Township property. (Docket entry no. 48)

Because of financial problems that were being experienced by KAB, the home construction did not progress on a timely basis and the residence was not substantially completed by January 31, 2006. (T. P. 7/7/10, pp. 45-46) However, for several months after January 31, 2006, Rizzo continued to participate in the construction process and visited the construction site on a frequent

basis. (*Id.*, pp. 100, 154; defendant's exhibit No. 2, p. 64)[1] During that same time period, Rizzo never alleged that MSA had breached the parties' agreement by failing to close by January 31, 2006, and to the contrary, consistently indicated that he intended to proceed with the closing after that date. (T. P. 7/7/10, pp. 150, 155; defendant's exhibit no. 2, pp. 64-65)

Rizzo did not obtain a mortgage commitment prior to the original closing date of January 31, 2006. (Defendant's exhibit no. 2, pp. 65-66) Moreover, although Rizzo secured a pre-qualification letter from Wachovia Bank on March 14, 2006 and an interest rate disclosure letter from Quicken Loans on March 23, 2006, he did not complete and submit a written mortgage application to a lender at that time. (T. P. 7/7/10, pp. 39-40, 65-67; plaintiff's exhibit nos. 16, 17) In fact, Rizzo did not secure a mortgage commitment until June 14, 2006. (Defendant's exhibit no. 3, pp. 1-2)

On April 7, 2006, a certificate of occupancy was issued for the home, thereby reflecting that the residence was substantially completed. (T. P. 7/7/10, pp. 41-42; plaintiff's exhibit no. 3) However, on April 26, 2006, Rizzo prepared and forwarded a "Real Estate Closing Statement" to MSA outlining his complaints regarding KAB and setting forth a list of items that he required to be completed in order to conclude the transaction.[2] (Defendant's exhibit no. 3, pp. 3-7) On May 7, 2006, Rizzo mailed a letter to

---

1. Without objection, MSA's Exhibit Nos. 1 through 7 were admitted into evidence. (T. P. 7/7/10, pp. 196-197).

2. Rizzo's "Real Estate Closing Statement" acknowledges that the original completion date "was revised" by the parties on numerous occasions due to delays attributable to KAB. (Defendant's Exhibit No. 3, p.3)

MSA stating that "[t]he house can close in less than one week and we will both be done with this" if MSA agreed to "reduce the selling price to $340,000.00." (Defendant's exhibit no. 7) While Rizzo's correspondence was highly critical of KAB, Rizzo represented that he "would definitely recommend [MSA] due to your willingness to set this straight." (*Id.*)

On June 12, 2006, MSA transmitted a certified mail letter to Rizzo demanding that Rizzo close on the parties' real estate transaction within two weeks. (Defendant's Exhibit No. 3, pp. 10-11) On that same date, Rizzo's counsel transmitted a letter to MSA confirming that Rizzo had been advised by MSA "on June 9 that he must close 'within two weeks.'" (*Id.*, p. 12) In his correspondence, Rizzo's counsel demanded that MSA return Rizzo's down payment of $5,000.00 and reimburse Rizzo for "the cost of the upgrades to your property" which Rizzo had furnished through KAB. (*Id.*) The parties' ensuing negotiations proved to be futile and Rizzo instituted this suit on July 10, 2006.(Docket entry No. 1)

MSA subsequently listed the subject property for sale at an advertised price of $449,000.00, which price exceeded the MSA-Rizzo price by $62,000.00. (T. P. 7/7/10, p. 84; plaintiff's exhibit No. 8) Although MSA had not utilized the services of a realtor for the MSA-Rizzo transaction, they were required to retain a realtor to list the Jefferson Township property for sale after Rizzo declined to conclude the parties' transaction. (T. P. 7/7/10, pp. 80-81) On January 24, 2007, MSA sold the property to Zhong M. Geng and Hui X. Hou for the sum of $365,000.00. (*Id.*, pp. 51-52, 191; defendant's exhibit nos. 4-5) In the interim period

between June 2006 and January 24, 2007, MSA incurred utility expenses of $1,091.23 to maintain the property and also paid a real estate commission of $14,600.00 on the MSA-Geng/Hou sale. (Defendant's exhibit no. 6)

In his amended complaint, Rizzo advanced a cause of action for breach of contract and asserted that MSA "breached the contract by failing to convey title to the property on or before January 31, 2006." (Docket entry no. 6, ¶25) Rizzo alternatively averred that he is entitled to damages from MSA based upon the doctrine of unjust enrichment. (*Id.*, ¶27-28) In its responsive pleading, MSA set forth a counterclaim seeking damages for its lost profit on the parties' aborted transaction, the real estate commission it paid in conjunction with the substituted sale on January 24, 2007, additional utility expenses incurred to maintain the property between June 2006 and January 2007, and interest costs attributable to Rizzo's breach of contract. (Docket entry no. 16, ¶¶34-37)

Since the parties had mutually modified the original closing date of January 31, 2006 and Rizzo had breached his mortgage application obligation prior to that date, a verdict was not entered in his favor with respect to his breach of contract claim predicated upon the initial closing date of January 31, 2006. Nevertheless, inasmuch as he had provided MSA with a driveway, sidewalk, landscaping, hardwood flooring, kitchen cabinets and appliances under circumstances making it inequitable for MSA to retain those benefits without payment of value, a verdict was entered in Rizzo's favor "only on his claim for unjust enrichment in the amount of $42,345.04 representing his down payment of $5,000.00, the value of

the extra-contractual improvements to the subject property in the amount of $34,500.00 for a concrete driveway, landscaping, a concrete sidewalk, hardwood flooring, and kitchen cabinets, and $2,845.04 for appliances that were purchased by [Rizzo] and installed in the subject property prior to its sale by [MSA] on January 24, 2007." (Docket entry no. 48, pp. 1-2) As for MSA's counterclaim, a breach of contract verdict was entered in its favor "in the amount of $37,691.23 comprised of the lost profit of $22,000.00 on the MSA, Inc. - Bryan Rizzo Agreement ($387,000.00 price - $365,000.00 actual sales price = $22,000.00), the real estate commission of $14,600.00, and $1,091.23 for utility expenses paid relative to the subject property from the date that the sale to [Rizzo] was scheduled to occur until the eventual sale of the property to Zhong M. Geng and Hui X. Hou on January 24, 2007." (*Id.*, at p. 2) MSA's breach of contract damages were ordered to bear 6 percent interest per annum from the date that payment was due. (*Id.*)

Rizzo now seeks JNOV relative to MSA's breach of contract verdict against him. Rizzo claims that MSA "breached when the property was not prepared to close on the 'time is of the essence' settlement date." (Plaintiff's brief in support, p. 5) According to Rizzo, "once [MSA] breached, Mr. Rizzo was absolved of his duties to perform under the contract" and "was not obligated to perform in any way as above set forth." (*Id.*, pp. 7, 9) MSA counters that Rizzo agreed to extend the original closing date based upon KAB's dilatorious actions, only to later breach the parties' revised agreement by failing to close in June 2006. (Defendant's reply brief, pp. 5-6)

MSA similarly requests JNOV as to Rizzo's unjust enrichment verdict and asserts "that Rizzo failed to establish either a benefit conferred upon MSA or that any benefit was unjustly retained by MSA." (*Id.*, p. 10) Relying upon *D.A. Hill Co. v. Cleve Trust Realty Investors*, 524 Pa. 425, 573 A.2d 1005 (1990), MSA argues that judgment must be entered in its favor on Rizzo's unjust enrichment claim. (Defendant's brief in support, pp. 5-7) MSA baldly asserts that "Rizzo produced absolutely no evidence that the monies he expended resulted in any increase in the value to the home." (Defendant's reply brief, p. 12) Last, MSA contends that "Rizzo has not sustained his burden of proof or even adducing (sic) any evidence to show that MSA was either enriched or that it was enriched (sic), thus, as a matter of law, this court should reverse its award of unjust enrichment." (*Id.*, p. 13) The parties' JNOV requests will be addressed *seriatim*.

## II. DISCUSSION

### (A) *STANDARD OF REVIEW*

Both parties seek to vacate the verdicts entered against them and request the entry of judgment in their favor pursuant to Pa. R.C.P. 227.1(a)(2). Judgment notwithstanding the verdict (JNOV) may be entered upon two bases: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. *Reott v. Asia Trend, Inc.*, 2010 WL 3636231 at *2 (Pa. Super. 2010); *Busy Bee, Inc. v. Wachovia Bank*, N.A., 2006 WL 723487 at * 18 (Lacka. Co. 2006), *aff'd.*, 932 A.2d 248 (Pa. Super.

2007), *app. denied,* 598 Pa. 778, 959 A.2d 318 (2008). With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in favor of the moving party. *Lockley v. CSX Transportation, Inc.,* 2010 WL 3529808 at * 7 (Pa. Super. 2010); *White v. Behlke,* 2009 WL 1904102 at * 8 (Lacka. Co. 2009), *aff'd.,* No. 1213 MDA 2009 (Pa. Super. Oct. 12, 2010). Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure. *Mirizio v. Joseph,* 2010 WL 1645965 at *3 (Pa. Super. 2010); *Bradford Forest Products, Inc., v. Amity & Co., Inc.,* 2002 WL 34098013 at *5 (Lacka. Co. 2002), *aff'd.,* 844 A.2d 1274 (Pa. Super. 2003), *app. denied,* 578 Pa. 693, 851 A.2d 141 (2004). JNOV should be entered only in the clearest of cases, and if any basis exists upon which the court could have properly made its award, then that verdict must be affirmed. *Scampone v. Grane Healthcare Co.,* 2010 WL 2780315 at * 9 (Pa. Super. 2010); *Millan v. Petsmart,* 2006 WL 2065405 at * 6 (Lacka. Co. 2006), *aff'd.,* 935 A.2d 32 (Pa. Super. 2007).

The findings of the judge in a non-jury trial are given the same weight and effect as a jury verdict such that an appellate court will not disturb the trial court's factual findings on the basis that the appellate court would have reached a different conclusion. *Ruthrauff, Inc. v. Ravin, Inc.,* 914 A.2d 880, 888 (Pa. Super. 2006), *app. denied,* 599 Pa. 711, 962 A.2d 1197 (2008). In a bench trial, "assessments of credibility and conflicts in evidence are for the trial court to resolve." *Sovereign Bank v. Valentino,*

914 A.2d 415, 420 (Pa. Super. 2006); *Tailor v. Tailor,* 2010 WL 1779341 at * 1-2 (Lacka. Co. 2010). For that reason, the trial judge, as factfinder, is free to believe all, part or none of the evidence presented. *Ruthrauff, Inc.,* supra; *Sovereign Bank,* supra; *Sayer v. Demkosky,* 2008 WL 1926734 at * 3 (Lacka. Co. 2008). Governed by this standard of review, the merits of the parties' requests for JNOV will be addressed.

## (B) *RIZZO'S JNOV REQUEST*

Rizzo claims that he cannot be liable for breach of contract as a matter of law inasmuch as he was purportedly absolved of all contractual duties once MSA failed to consummate the closing on January 31, 2006. To succeed with its cause of action for breach of contract, MSA was required to establish: (1) the existence of an agreement, including its essential terms; (2) Rizzo's breach of a duty imposed by that agreement; and (3) damages suffered by MSA from the breach. *McShea v. City of Philadelphia,* 995 A.2d 334, 340 (Pa. 2010); *Busy Bee Inc.,* supra at *26. When a party fails to perform any obligation imposed by the parties' agreement, the lack of performance is deemed a breach of the agreement creating that obligation. *John B. Conomos, Inc. v. Sun Co., Inc.,* 831 A.2d 696, 707-708 (Pa. Super. 2003), app. denied, 577 Pa. 697, 845 A.2d 818 (2004); *Millan,* supra at *7.

A written agreement may be orally modified under Pennsylvania law, even when the contract expressly provides that all modifications must be in writing. *ADP, Inc. v. Morrow Motors, Inc.,* 969 A.2d 1244, 1249 (Pa. Super. 2009). "Our Supreme Court has recognized that

'even though the time fixed in an agreement for settlement is stated to be of the essence of the agreement, it may be extended by oral agreement or be waived by the conduct of the parties and where the parties treat the agreement as in force after the expiration of the time specified for settlement, it becomes indefinite as to time and neither can terminate it without reasonable notice to the other.'" *Davis v. Northridge Development Associates,* 622 A.2d 381, 385 (Pa. Super. 1993) (quoting *Warner Company v. MacMullen,* 381 Pa. 22, 29,112 A.2d 74, 78 (1955)), *app. denied,* 537 Pa. 623, 641 A.2d 588 (1994). The testimonial and documentary evidence clearly demonstrated that Rizzo and MSA both agreed to waive the "time is of the essence" settlement date of January 31, 2006. See, *Empire Properties, Inc. v. Equireal, Inc.,* 674 A.2d 297, 303 (Pa. Super. 1996). Rizzo had not even made application for a mortgage as of that date and continuously represented and acted as though he intended to proceed with the revised closing throughout the spring of 2006. As such, Rizzo's post-trial claim that MSA breached the parties' agreement by failing to close on January 31, 2006 is wholly devoid of merit.

It is true that a material breach by one party to a contract entitles the non-breaching party to suspend contractual performance. See, *Widmer Engineering, Inc. v. Dufalla,* 837 A.2d 459, 467 (Pa. Super. 2003), *app. denied,* 578 Pa. 701, 852 A.2d 313 (2004); *Busy Bee, Inc.,* supra at *57. The parties' agreement obligated Rizzo to submit a completed, written mortgage application within ten days of September 23, 2005. Rizzo did not make any such application until June 14, 2006. Therefore, three months

prior to the original closing date of January 31, 2006, Rizzo breached the mortgage contingency clause of the parties' agreement. In the eyes of the law, he could not be classified as a "non-breaching party" entitled to suspend further contractual performance as of January 31, 2006.

The credible evidence demonstrated that Rizzo had agreed through his words and actions to purchase the subject property in the late spring 2006, but breached that enforceable promise by refusing to consummate the transaction in June 2006. By letter dated June 12, 2006, MSA's president warned Rizzo that MSA would incur additional expenses, including the services of a realtor, if Rizzo refused to close in June 2006. (Defendant's exhibit no 3, p. 11) The evidence further established that MSA incurred those consequential damages and its lost profit as a result of Rizzo's breach. Accordingly, MSA satisfied its burden of proof with respect to its breach of contract claim, and Rizzo has not demonstrated that the law requires a verdict in his favor on MSA's contract claim or that the evidence was such that a verdict in his favor was beyond peradventure.

### (C) *MSA'S JNOV REQUEST*

In his sole breach of contract claim, Rizzo alleged that MSA breached the parties' agreement "by failing to convey title to the property on or before January 31, 2006." (Docket entry no 6, ¶ 25) As noted above, the parties mutually extended that completion date due to KAB's delays and Rizzo's concomitant failure to fulfill his contractual mortgage application obligation by that date. Hence, there was no credible evidentiary basis

upon which to conclude that MSA was contractually liable for not closing the transaction by January 31, 2006. Notwithstanding that fact, a verdict was entered in favor of Rizzo on his alternate theory of unjust enrichment. MSA contends that Rizzo's unjust enrichment claim was insufficient as a matter of law.

A claim for unjust enrichment arises from a quasi-contract which "imposes a duty, not as a result of any agreement, whether expressed or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." *Stoeckinger v. Presidential Financial Corp. of Delaware Valley*, 948 A.2d 828, 833 (Pa. Super. 2008). The elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Safe Auto Insurance Company v. Berlin*, 991 A.2d 327, 336 n. 6 (Pa. Super. 2010); *DTK Ventures, L.P. v. Russo,* 2006 WL 2988463 at * 7 (Lacka. Co. 2006). The most significant element of the doctrine of unjust enrichment is whether the enrichment of the defendant is unjust. *Berlin,* supra; *Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.,* 933 A.2d 664, 669 (Pa. Cmwlth. 2007), *app. denied,* 596 Pa. 755, 947 A.2d 737 (2008).

To recover under an unjust enrichment theory, the plaintiff must demonstrate that the defendant "either wrongfully secured or passively received" a benefit that it would be unconscionable for the defendant to retain.

*EBC, Inc. v. Clark Bldg. Systems, Inc.*, 618 F.3d 252, 273 (3rd Cir. 2010); *Limbach Co., LLC v. City of Philadelphia*, 905 A.2d 567, 575 (Pa. Cmwlth. 2006) (quoting *Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. 1985)); *Buntz v. Peperno*, 2008 WL 693590 at * 8 (Lacka. Co. 2008). Whether the doctrine applies depends upon the particular factual circumstances of each case. Berlin, supra; *Filippi v. City of Erie*, 968 A.2d 239, 242 (Pa. Cmwlth. 2009). In determining if the doctrine applies, the focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched. *Filippi*, supra; *Northeast Fence & Iron Works*, 933 A.2d at 668-69. Where unjust enrichment is found, "the law implies a quasi-contract which requires the defendant to pay to plaintiff the value of the benefit conferred." *Northeast Fence & Iron Works*, supra at 669.

It is undisputed that a direct contractual relationship existed between MSA and KAB in that MSA specifically retained KAB to build Rizzo's home, as MSA had done on other construction projects.[3] (T. P. 7/7/10, pp. 22-25, 55, 66; JPO, pp. 2, 9) MSA had direct dealings with KAB throughout the course of the Rizzo construction and was fully cognizant of the extra-contractual additions to the home that had been requested and financed by Rizzo. (Defendant's ehibit no 3, pp. 3-11) More importantly, MSA also injected itself into the Rizzo-KAB dispute concerning completion of the extra-contractual items and

3. Since Rizzo's unjust enrichment claim concerns additional work that was performed outside any promises made in the MSA-Rizzo Agreement, the existence of a written contract between MSA and Rizzo does not preclude Rizzo from recovering on his unjust enrichment claim. *Ruthrauff, Inc.*, 914 A.2d at 893.

became actively involved with ensuring the completion of most of that work by KAB. In his letter to Rizzo dated June 12, 2006, MSA's president acknowledged the "difficulty" that Rizzo was experiencing with KAB's completion of that additional work and further confirmed that MSA had "work[ed] with [Rizzo] and KAB to get these items achieved, which most of [Rizzo's extra-contractual] items have been completed, as a result of [MSA's] efforts...." (*Id.*, p. 11).

When MSA later assumed exclusive control of the property and listed it for sale, MSA retained the benefit of the extra-contractual items that had been purchased by Rizzo. The credible direct and circumstantial evidence established that those extras enhanced the value of the property. Indeed, when MSA advertised the home and land for sale, it published a listing price that exceeded the MSA-Rizzo contract price by $62,000.00. Consequently, the credible proof demonstrated that MSA either wrongfully secured or passively received a benefit of $37,345.04 in extra-contractual improvements and appliances, not including Rizzo's contractual down payment of $5,000.00.

Despite the foregoing evidentiary record, MSA avers that the holding in *D. A. Hill Co.* dictates that judgment must be entered in MSA's favor on Rizzo's unjust enrichment claim. In *D.A. Hill Co.*, a construction lender foreclosed on a parcel of partially-developed property after the developer defaulted on the lender's construction loan, and unpaid subcontractors instituted an unjust enrichment action against the lender on the theory that the lender had been unjustly enriched by obtaining possession of the

project for less than its full value. The lender denied that it had been enriched since it had paid the developer various amounts, although those sums had not been remitted to the subcontractors, and the subcontractors had failed to acknowledge the payouts under the loan that the lender had made to the developer prior to its foreclosure on the property. In accepting the lender's position, the Supreme Court reasoned that the subcontractors had not shown "the existence of a benefit" since "the subcontractors failed to establish that the value of the improved property at the time of foreclosure exceeded amounts already advanced by [lender] on the construction loan." *D.A. Hill Co.*, 524 Pa. at 433-434, 573 A.2d at 1010.

The court in *D.A. Hill Co.* cited *Meehan v. Cheltenham Township*, 410 Pa. 446, 189 A.2d 593 (1963) and the Restatement of Restitution §110 (1936) as having created a two part test for unjust enrichment to be applied "in a case where a subcontractor has provided services and chattels to an owner *who had no direct contractual relationship to the subcontractor...."* Id.*, at 432, 573 A.2d at 1009 (emphasis added). In such a case, "(1) any benefit conferred must...be measured by the value of the benefit to the owner...and (2) the owner's retention of the benefit without paying any compensation to the subcontractor would not be unjust *if the owner did not contract directly with* or mislead the subcontractor." *Id.* (emphasis added) Thus, a critical component of the holding in *D.A. Hill Co.* was the absence of any direct contractual relationship between the owner/lender and the unpaid subcontractors.

Subsequent appellate precedent has distinctly recognized that distinguishing feature of the *D.A. Hill Co.*

analysis. In *Limbach Co.*, supra, a contractor sued the city of Philadelphia and its industrial authority to recover for unpaid work that the contractor had performed on airport terminals pursuant to a contract with U.S. Airways. In reversing the trial court's dismissal of the contractor's unjust enrichment claim against the city and its industrial authority, the Commonwealth Court analyzed *D.A. Hill Co.* and *Meehan* and concluded that "[t]he real question is whether the property owner had direct dealings with the subcontractor, which caused the subcontractor to perform work." *Limbach Co.,* 905 A.2d at 577.[4] Since the city and industrial authority were intimately involved with the airport terminal construction and maintained a reversionary interest in the project, the Commonwealth Court found that the city and industrial authority were not mere lenders like CleveTrust in *D.A. Hill Co.* and instead could be liable to the contractor for unjust enrichment based upon the services that the contractor provided to U.S. Airways. *Id.*, at 577-578. Accord, *Northeast Fence and Iron Works*, 933 A.2d at 670-671.

*D.A. Hill Co.* and its progeny would be controlling if Rizzo, or even KAB, sought to recover unjust enrichment damages from the property owners, Zhong M. Geng and Hui X. Hou, for the value of any extra-contractual work

---

4. According to *Limbach,* the *D.A. Hill Co.* court also deemed it significant that the subcontractors in that case "had voluntarily waived their rights to mechanics' liens and went forward without being protected by a performance bond." *Limbach Co.,* 905 A.2d at 577 n. 10. As per *Limbach,* the *D.A. Hill Co.* court "characterized this decision as a calculated decision that carried a certain amount of risk, and that it would be 'manifestly unfair' to restructure the contractual arrangement so as to shift the risk onto CleveTrust." *Id.* (quoting *D.A. Hill Co.,* 524 Pa. at 434, 573 A.2d at 1010).

performed on the Jefferson Township property. Like the owners/lenders in *D.A. Hill Co.* and *Meehan*, Geng and Hou had no direct contractual relationship with either KAB or Rizzo. Geng and Hou also had no involvement with the construction extras requested by Rizzo and performed by KAB, and that additional work was completed long before Geng and Hou purchased the property. Therefore, pursuant to *D.A. Hill Co.* and *Meehan*, Geng and Hou could not be liable to Rizzo for unjust enrichment in the absence of proof that Geng or Hou somehow misled Rizzo or KAB.

However, in contrast to the property owners and subcontractors who litigated the unjust enrichment claims in *D.A. Hill Co.* and *Meehan*, MSA and KAB did have a direct contractual relationship, as did MSA and Rizzo. Moreover, unlike the lender/owner in *D.A. Hill Co.* which had paid the developer for the subcontractors' work (even though the developer did not remit those monies to the subcontractors), MSA never paid Rizzo or KAB for the extra-contractual improvements made to the property. As a result, *D.A. Hill Co.* and *Meehan* are clearly inapplicable to Rizzo's unjust enrichment claim against MSA.

The uncontroverted evidence established that direct contractual relationships existed between MSA-KAB for the construction of the home and MSA-Rizzo for the purchase of the property. MSA was closely involved with the construction project and had continuous contact and dealings with both KAB and Rizzo. Further, MSA was aware that the extra-contractual items had been installed in the home and was even responsible for ensuring their completion. Those additional improvements that were financed by Rizzo enhanced the value of the property that

was sold by MSA. MSA passively received the benefit of those enhancements under circumstances that would make it unconscionable and inequitable for MSA to retain that benefit without payment of value to Rizzo.

The fact that MSA subsequently sold the Jefferson Township property for $365,000.00 does not alter the net award in Rizzo's favor in the amount of $4,653.81. Following Rizzo's refusal to close on the parties' transaction in June 2006, MSA had a duty to mitigate its losses by taking reasonable actions to reduce or eliminate any damages attributable to the breach of contract. See, *Delliponti v. DeAngelis*, 545 Pa. 434, 443, 681 A.2d 1261, 1265 (1996). The credible evidence demonstrated that after MSA received the benefit of the extra-contractual improvements totaling $37,345.04, it listed the property for sale at $449,000.00, but accepted a purchase price of $365,000.00. Under the circumstances, MSA failed to reasonably mitigate its contractual damage by selling the property for a more reasonable price that reflected Rizzo's extra-contractual improvements.

Although MSA's failure to mitigate $37,345.04 of its damages was not specified as an alternate basis for the net award in the non-jury verdict of July 8, 2010, the verdict may be affirmed on any valid grounds, including those that were not originally relied upon by the trial court. See, *Szymanowski v. Brace*, 987 A.2d 717, 725 & n. 8 (Pa. Super. 2009), *app. denied,* 997 A.2d 1179 (Pa. 2010). Whether upon a finding of unjust enrichment or a failure to mitigate, Rizzo is entitled to a credit of $37,345.04 for the extra-contractual items and appliances that he furnished to MSA. In either event, MSA has not

established its entitlement to the drastic remedy of JNOV. See, *Scampone, supra* (if any basis exists upon which the court could have properly made its award, the lower court verdict must be affirmed).

## ORDER

And now, November 5, 2010, upon consideration of "plaintiff's motion for post-trial relief pursuant to Pa. R.C.P. 227.1" and "defendant MSA, Inc.'s post-trial motion," the memoranda of law submitted by the parties and the credible evidence introduced during the bench trial, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

1. The motion for post-trial relief filed by plaintiff Bryan Rizzo is denied;

2. The motion for post-trial relief filed by defendant MSA, Inc. is denied;

3. Judgment is entered in favor of plaintiff Bryan Rizzo and against defendant MSA, Inc., on the plaintiff's direct claim in the amount of $42,345.04, and in favor of defendant MSA, Inc. and against plaintiff Bryan Rizzo in the amount of $37,691.23, plus interest at the rate of 6 percent per annum from the date payment was due, on the defendant's counterclaim; and

4. A net judgment is entered in favor of plaintiff Rizzo in the amount of $4,653.81, not including statutory interest to be calculated on the counterclaim award in favor of defendant MSA, Inc. in the amount of $37,691.23.