Frank C. Hilton, Plaintiff *v.* State Employees' Retirement Board of the Commonwealth of Pennsylvania, Defendant.

640

Argued January 6, 1976, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Harold Gondelman,* with him *Baskin, Boreman, Wil-
ner, Sachs, Gondelman & Craig,* for plaintiff.

*J. Justin Blewitt, Jr.,* Deputy Attorney General, with
him *Lawrence Silver,* Deputy Attorney General, and
*Robert P. Kane,* Attorney General, for defendant.

OPINION BY JUDGE MENCER, March 10, 1976:

Frank C. Hilton (Hilton) was a cabinet-level officer of the Commonwealth of Pennsylvania from January 25, 1971 until September 13, 1974, occupying an office of high public trust as the Secretary of Property and Supplies. He was also, during this time, a member of the State Employees' Retirement System.

Following the termination of his employment with the Commonwealth, Hilton instituted an action in mandamus, or alternatively for specific performance, to compel the State Employees' Retirement Board (Board) to release funds allegedly due to him under the option which he selected for the payment of his retirement benefits.[1]

An answer was filed to Hilton's complaint, and as new matter it was alleged that Hilton had been convicted in Federal courts on two separate counts of extortion from which convictions appeals are presently pending. It was alleged that these extortion convictions arose from two separate transactions in which Hilton was involved while performing his official duties as Secretary of Property and Supplies. It was further alleged that as a result of these extortions Hilton received in excess of $177,000, causing financial loss to the Commonwealth in the form of increased insurance costs and a loss of approximately $177,000 in actual revenues because of Hilton's failure to pay over this sum of money to the Pennsylvania Higher Education Assistance Agency.[2] Hilton filed a reply to the new matter in which he denied

---

1. The option selected by Hilton would allow him to withdraw approximately $20,000 immediately and receive payments of $230 monthly for the remainder of his life, and upon his death his beneficiary would receive the balance of $32,620, that amount being the remaining present value of his account after the initial withdrawal of approximately $20,000.

2. The Commonwealth is pursuing its claim relative to the alleged $177,000 loss by a suit in equity filed in this Court at No. 1363 C.D. 1975.

the Commonwealth's allegations and moved for summary judgment on the pleadings.

Hilton's claim is based on his assertion that he has complied with all requirements precedent to payment of benefits and has furnished to the Board all necessary forms and applications for selection of options and that the State Employees' Retirement Code (Retirement Code), 71 Pa. C.S. §5953, exempts his retirement benefits from execution and other process.[3] The Commonwealth makes the retort that such a claim under the circumstances of this case represents the zenith of arrogance.

We view this case with an awareness that an action in mandamus is essentially equitable in nature, requiring the application of equitable considerations. It is reserved only for those situations where necessary to promote the ends of justice and where the prayer of the complainant appeals to the conscience of the court. *Taggart v Board of Directors of Canon-McMillan Joint School System*, 409 Pa. 33, 185 A. 2d 332 (1962). Mandamus is an extraordinary writ which lies to compel the performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy. *Martin v. Garnet Valley School District*, 441 Pa. 502, 272 A. 2d 913 (1971).

Likewise, courts of equity are entrusted with discretion to determine whether or not to grant specific

3. Section 5953 of the Retirement Code reads in pertinent part as follows:

"(a) The right of a person to any benefit or right accrued or accruing under the provisions of this code and the moneys in the fund are hereby exempt from any State or municipal tax, levy and sale, garnishment, attachment, spouse's election, or any other process whatsoever, and shall be unassignable except:

"(1) To the Commonwealth in the case of a member who is terminating State service and has been determined to be obligated to the Commonwealth for the repayment of money . . . ."

performance. *Payne v. Clark,* 409 Pa. 557, 187 A. 2d 769 (1963). A decree of specific performance is a matter of grace and not of right. *Mrahunec v. Fausti,* 385 Pa. 64, 121 A. 2d 878 (1956). Specific performance should only be granted where the facts clearly establish the plaintiff's right thereto, where no adequate remedy at law exists, and where justice requires it. *Roth v. Hartl,* 365 Pa. 428, 75 A. 2d 583 (1950).

Applying these equitable principles to this case, we conclude, as a matter of public policy, that it would be unconscionable to afford Hilton the relief he seeks by his pending motion for summary judgment. Although Hilton's convictions in the Federal courts have been appealed and may be overturned and although the outcome of the Commonwealth's suit in this Court seeking a constructive trust, relative to the alleged $177,000 loss caused by Hilton, is unknown, these legal proceedings surely suggest that plaintiff's legal right here lacks the clearness required for a successful mandamus action. A highly placed official, whose convictions establish a breach of trust in office with resulting financial loss in excess of the moneys he claims, has placed himself in a position where there is neither a legal nor a moral obligation due him in connection with his claim for money benefits from the public employer whom he has victimized.

A writ of mandamus is not a writ of right. If the interests of the general public will be injuriously affected, or if the object sought to be obtained is inequitable, a court may, in its discretion, refuse to issue the writ. *Waters v. Samuel,* 367 Pa. 618, 80 A. 2d 848 (1951). We cannot conclude in this case that the interests of the general public will be anything but injuriously affected by the granting of Hilton's motion for summary judgment. The public could not possibly comprehend, nor can we judiciously rationalize, that the Legislature intended, when it enacted the Retirement Code, such an

absurd result as Hilton requests in this litigation. If Hilton is in due time vindicated, then there will be ample opportunity for him to obtain the retirement benefits to which he would be entitled. If Hilton's convictions are upheld and he is determined to be obligated to the Commonwealth for repayment of money, it would have been preposterous to have paid him at least $20,000 of additional taxpayers' funds before launching an expedition fraught with uncertainty and legal niceties to discover recoverable assets belonging to Hilton.

We submit that our decision in this case comports with the spirit of the holding in *Francis v. Corleto*, 418 Pa. 417, 211 A. 2d 503 (1965). In *Francis*, a complaint in mandamus was dismissed where the City of Philadelphia suffered a financial loss due to the failure of an employee to render faithful service and the employee sought payment of terminal vacation pay and return of payments made into the retirement system pension fund.

We conclude this opinion by applying to the facts of the instant case language utilized by Mr. Justice ROBERTS in *Francis v. Corleto, supra*: Surely, reason, common experience, sound governmental administration and public policy dictate the justice and necessity to afford the Commonwealth, prior to granting a summary judgment in mandamus, an opportunity to have determined what, if any, money Hilton is obligated to repay and to offset such amount against funds in its control. This is particularly so where the loss claimed by the Commonwealth results from an alleged malfeasance in office by Hilton. It would be incredible indeed to hold that Hilton is entitled to retirement funds accumulated during a period when he was engaged in conduct that was detrimental to his public employer.

Accordingly, we enter the following

### ORDER

Now, this 10th day of March, 1976, the motion of Frank C. Hilton for summary judgment is denied.

President Judge BOWMAN dissents.

---

DISSENTING OPINION BY JUDGE WILKINSON:

If hard cases make bad law, then this must be a very hard case indeed.

As quoted in footnote 3 above, Section 5953 of the Retirement Code provides that the monies in the Retirement Fund are expressly "exempt from any State or municipal tax, levy and sale, garnishment, attachment, spouse's election, or any process whatsoever. . . ." How could the Legislature have been any more specific?

The majority would have us believe that the Legislature could never have considered that the above clear language would mean that a person who had money from the Commonwealth wrongfully would be entitled to any interest in the Retirement Fund before the wrongfully obtained money was repaid. Indeed, in the same footnote, the Legislature did make an exception for such circumstance saying that in that instance, the culpable employee who is terminating State service may assign the retirement funds to the Commonwealth. Obviously, there has been no such assignment here.

The majority opinion devotes itself in part to pointing out that no mandamus should issue until the matter of the retiree's liability to the Commonwealth is determined. Under the plain language of the statute, this is irrelevant.

I must conclude with the statement attributed to Sir Thomas More: "If we throw away the law to beat the Devil, what shall we use as a shield when he turns on us?"

Judge BLATT joins in this dissent.