573 A.2d 1005

**D.A. HILL COMPANY, Appellee,**

v.

**CLEVETRUST REALTY INVESTORS, Appellant.**

**ERIE FLEXLUME SIGN CORPORATION and Felheim Roofing Company, Appellees,**

v.

**CLEVETRUST REALTY INVESTORS, Appellant.**

Supreme Court of Pennsylvania.

Argued March 5, 1990.

Decided April 25, 1990.

J. Michael Baggett, Yurcheshen & Baggett, Pittsburgh, for appellant.

Eugene J. Brew, Jr., Erie, for D.A. Hill Co.

John R. Wingerter, Erie, for Erie Flexlume Sign Corp. and Felheim Roofing Co.

Before NIX, C.J. and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

The issue raised by these cases is whether subcontractors who have furnished services on a construction project, but who have not been paid for all of their work, can recover on an unjust enrichment theory against a lending institution which foreclosed on the project after the owner defaulted on the construction loan.

On March 22, 1974 CleveTrust Realty Investors entered into a construction loan agreement with Edinboro Development Company, the owner, in the amount of $2,200,000 for the construction of a shopping mall in Erie County, Pennsylvania, to be known as the Edinboro Mall. The loan was secured by mortgage and note in which CleveTrust held the first lien on the property.

On the same date, Edinboro entered into a contract with Drakes Mills Development Company, which was to act as general contractor for the project. Appended to the contract was a cost estimate prepared by the general contractor in which the cost to build the mall was divided into forty-eight different categories. After construction began, Drakes Mills submitted a monthly application for payment based upon invoices it received from subcontractors for work performed the prior month. An architect employed by CleveTrust verified that the work described on the applications for payment was actually performed.

The monthly applications for payment were divided into the same forty-eight categories as appeared in the cost estimate, and the general contractor placed the subcontractors in one or more of these categories. The subcontractors were hired by Drakes Mills, the general contractor, and CleveTrust had no knowledge of who the subcontractors were or which of the forty-eight categories any of them had been placed in. The subcontractors all executed waivers of mechanics' liens.

The payment process involved the subcontractor's submission of invoices to the general contractor, the architect's approval, submission to Edinboro, the owner, and then submission to CleveTrust. Upon receipt of the application for payment, Clevetrust wired the requested amount to a title company, which would insure that CleveTrust's lien on the property was primary, and then the title company would disburse the money to Edinboro, which would pay Drakes Mills, the general contractor. Drakes Mills, in turn, would pay the subcontractors.

The first eight applications for payment were paid in full. In November of 1974, however, less than eight months after the execution of the loan documents, Edinboro failed to make a mandatory interest payment on the loan. In accordance with its rights under the loan agreement, CleveTrust refused to disburse any additional funds. At the time of default, CleveTrust had disbursed $1,903,891.13, not including retainage, as requested in applications for payment one through eight. Five days after the default, the ninth application for payment was submitted to CleveTrust, which declined to pay.

The general contractor then communicated to the subcontractors Edinboro's default and CleveTrust's refusal to release additional funds. The subcontractors then ceased work, although appellee Felheim Roofing had already completed its work. In January, 1975, several subcontractors filed mechanics' liens against Edinboro for labor and materials. A complaint was subsequently filed, and Edinboro's motion for summary judgment was granted by the Court of Common Pleas of Erie County because of the waivers of mechanics' liens executed by the subcontractors. Superior Court affirmed.

From November 1974 through February 1975, Edinboro continued in default, failing to make required interest payments. On February 19, 1975, CleveTrust began foreclosure proceedings on its first mortgage. On March 7, 1975, an involuntary bankruptcy petition was filed by Edinboro's creditors and a receiver was appointed to operate the business. CleveTrust's foreclosure suit was stayed by a temporary restraining order and the automatic stay provisions of the Bankruptcy Act. On August 25, 1975, the bankruptcy court lifted the stay and CleveTrust continued with its foreclosure action. CleveTrust foreclosed on the mall and purchased it at sheriff's sale on December 12, 1975 for taxes and costs in the amount of $120,921.05.

Five years after CleveTrust purchased the mall, following Superior Court's decision in *Gee v. Eberle*, 279 Pa.Super. 101, 420 A.2d 1050 (1980), Hill, one of the appellees herein,

filed a complaint in equity against CleveTrust alleging that CleveTrust had been unjustly enriched. Felheim and Erie Flexlume Sign Corporation, the other appellees in this action, filed a joint complaint on January 8, 1981.

CleveTrust responded to these complaints by answering that it had not been unjustly enriched, since the value of the mall was less than the amounts disbursed to the owner, and that even if it were enriched, any enrichment was not unjust, for CleveTrust advanced funds to the owner adequate to pay for the work performed by each subcontractor.

A jury trial was conducted on June 15–17, 1982, and the Court of Common Pleas of Erie County found that the subcontractors were entitled to rely on the $2,200,000 loan commitment to the owner and that since the full amount of the commitment had not been paid, each subcontractor was entitled to the full amount of its claim. Exceptions were taken, and the court en banc remanded for further consideration of whether CleveTrust had been unjustly enriched. Specifically, on remand the trial court was to consider whether sufficient funds were advanced to satisfy the claims of each subcontractor.[1]

Upon remand, the trial court determined that the subcontractors were not entitled to rely on CleveTrust's initial loan commitment since they received no assurances from CleveTrust itself regarding the disbursement of funds. The court held that the "as-is" value of the mall was greater

---

1. The court en banc relied on two Superior Court cases in remanding: *Myers–Macomber Engineers v. M.L.W. Construction Corp.*, 271 Pa.Super. 484, 414 A.2d 357 (1979), and *Gee v. Eberle*, 279 Pa.Super. 101, 420 A.2d 1050 (1980).

In *Myers–Macomber*, Superior Court determined that a mortgagee which had foreclosed on a construction project had not been unjustly enriched where it had already advanced monies budgeted for the work for which the plaintiff-subcontractor was suing.

In *Gee v. Eberle*, Superior Court held that if a lender purchases the construction project at a sheriff's sale and has made advances sufficient to pay for the work of a subcontractor, the lender has not been unjustly enriched. On the other hand, if the lender has *not* made advances sufficient to pay for the subcontractor's work, the subcontractor may be entitled to recovery on a theory of unjust enrichment. 279 Pa.Super. at 123, 420 A.2d at 1062.

than the amount advanced by CleveTrust at the time of default and that CleveTrust was, therefore, enriched. Further, the court determined that CleveTrust was enriched, but not unjustly, where the advances made were in excess of the amount claimed by the subcontractors and no other subcontractor performed work under the line item in question, but that CleveTrust was unjustly enriched by the amount of retainage (10% of the amount invoiced and held back by CleveTrust) where the advances made were not in excess of the amount claimed by certain subcontractors. Accordingly, the trial court awarded appellees Hill and Felheim Roofing a portion of their claims, but determined that sufficient funds had been distributed to satisfy the claim of appellee Erie Flexlume Sign Corporation, and that Erie Flexlume, therefore, was not entitled to any recovery.[2]

2. The trial court made the following findings of fact with respect to the appellees in this case:

10. Hill invoiced Drake Mills a total of $95,320.25 for his work performed, labor and materials, and is owed a balance of $44,547.52 from January 1, 1975.

11. Flexlume invoiced Drake Mills a total of $16,466.43 for its work performed, labor and materials, and is owed a balance of $16,466.43 from February 18, 1975.

12. Felheim invoiced Drake Mills a total of $77,900.00 for its work performed, labor and materials, and is owed a balance of $19,140.00 from February 18, 1975.

\* \* \* \* \* \*

33. Hill performed work under the following line items only:
No. 16. Resilient floor
No. 17. Acoustic ceiling grid
No. 18. acoustic ceiling tile
No. 19. mall floor
No. 20. drywall
No. 48. steel stud and insulation

34. Hill was not the only subcontractor to perform work under these line items.

35. CleveTrust advanced a total of $95,386.00 (less 10% retainage) earmarked for these six (6) line items.

36. Flexlume performed work under the following line item only:
No. 28—site sign.

37. Flexlume was the only subcontractor to perform work under this line item.

38. CleveTrust advanced a total of $20,000.00 (less 10% retainage) earmarked for this line item.

39. Felheim performed work under the following line items only:
No. 10. built-up roof and insulation

An appeal was taken to Superior Court, which affirmed the trial court, with Judge Wieand dissenting 364 Pa.Super. 169, 527 A.2d 1008. CleveTrust then filed a petition for allowance of appeal and this Court granted allocatur. CleveTrust, on appeal, claims that the lower courts erroneously determined that it was unjustly enriched by its foreclosure on the mall. For the reasons that follow, we agree.

The law governing cases of this type has been set out in *Meehan v. Cheltenham Township*, 410 Pa. 446, 189 A.2d 593 (1963). In *Meehan*, a developer subcontracted with another to install streets and sewers in his development but became insolvent before he paid the subcontractor. Subsequently, the sewers and streets were dedicated to the township, and after the subcontractor unsuccessfully attempted to establish a mechanics' lien on the improvements, he sued the township on a theory of unjust enrichment, seeking more than $17,000, the value of his materials and labor. In denying the claim of enrichment, this Court stated:

> [A]ppellant [subcontractor] cannot merely allege its own loss as the measure of recovery—i.e., the value of labor and materials expended—but instead must demonstrate that appellee [the township] has in fact been benefitted.*

---

* Where the value of the benefit differs from the amount of the loss, and the recipient is free from fault, the amount of recovery is

No. 11. sky dome
40. Felheim was not the only subcontractor to perform work under these line items.
41. CleveTrust advanced a total of $108,872.00 (less 10% retainage) earmarked for these line items.
Slip Op. at 3, 6–7.
The trial court then made the following awards:
Hill was awarded $9,538 retainage and $18,136 which CleveTrust had budgeted but not funded on application number nine.
Flexlume was not entitled to any recovery "since CleveTrust advanced [$20,000 less 10% retainage, or] $1,533.57 in excess of Flexlume's invoice and no other subcontractor performed work under this line item."
Felhcim Roofing was awarded $10,887, the retainage which CleveTrust held back on its advance of $108,872 on this line item.

> generally limited by the value of the benefit. See Restatement, Restitution § 1, comment e (1936).

410 Pa. at 450, including n. 5, 189 A.2d at 595, including n. 5.

This Court also held that even if Meehan had shown that the township received a benefit, it had not demonstrated that the township's retention of the benefit without compensating the subcontractors was unjust:

> The Restatement of Restitution sets forth various rules for the determination of whether the retention of a particular enrichment is unjust. Section 110 deals with the situation where a third party benefits from a contract entered into between two other parties. It provides that, in the absence of some misleading by the third party, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third party. The Restatement gives as an example of this principle the situation where A purchases a ring from C, a jeweler, for his fiancee B and then defaults in the payments. The Restatement states that C cannot recover the ring or its value from B.

410 Pa. at 450–51, 189 A.2d. at 596.

■ In sum, this Court has held that in a case where a subcontractor has provided services and chattels to an owner who had no direct contractual relationship to the subcontractor, (1) any benefit conferred must, for purposes of recovery on an unjust enrichment theory, be measured by the value of the benefit to the owner, not by the value of the invoice submitted by the subcontractor; and (2) the owner's retention of the benefit without paying any compensation to the subcontractor would not be unjust if the owner did not contract directly with or mislead the subcontractor.

In the present case, the subcontractors attempted to establish enrichment by evidence of their unpaid invoices and evidence of the value of the mall as determined by an appraisal which was done approximately seven months before the foreclosure. As we have seen from the *Meehan*

case, the value of the invoices is not a proper measure of enrichment. The appraised value of the mall, on the other hand, is relevant to the question of enrichment, which would consist of any surplus value after advances made were set off against the appraised value. The trial court determined that CleveTrust had been enriched in that the mall was appraised at between $2,000,000 and $3,000,000, and CleveTrust had advanced only $1,903,000. Slip Op. at 11.

The trial court was in error in making this determination, however. The appraiser testified that he made two appraisals, one in 1973 at $3,000,000 and one in 1975 at $2,000,000 (R. 137a ff.). More particularly, the appraiser testified that, in May of 1975, seven months before the sheriff's sale, the value of the mall was either $2,000,000 or $1,950,000, depending on whether the capitalization rate was ten percent or ten point five percent (R. 138–9a). He also testified that the effect of a foreclosure would be to depress the value of the property (R. 140a). This evidence suggests that the value of the mall in 1975 was approximately $2,000,000, erring on the high side, not between two and three million, as the trial court determined.[3] This $2,000,000 figure, however, would have to be reduced by $100,000, the cost of completing the mall (R. 153a). Since Clevetrust advanced $1,903,000 on a mall that was worth, on this revised estimate, $1,900,000, it was not enriched.

■ Thus, neither the amount of the invoices nor the appraisal established the value of the benefit conferred, for the invoices were irrelevant to the question of enrichment, and the subcontractors failed to establish that the value of the improved property at the time of foreclosure exceeded amounts already advanced by CleveTrust on the construc-

3. Even this $2,000,000 figure, however, is not without its difficulties. The $2,000,000 appraisal was done seven months before CleveTrust purchased the property at sheriff's sale and the value of the property during this time was in a state of flux because the area in which the mall was located was in the midst of an economic decline (R. 161a). This, added to the foreclosure, suggests that the value of the property would have been lower than $2,000,000.

tion loan. Having failed to establish the existence of a benefit, the subcontractors could not recover on an unjust enrichment theory.[4]

Further, even if the value of the benefit had been established, the subcontractors could not recover on an unjust enrichment theory because, assuming that CleveTrust was enriched, it was not *unjustly* enriched. As this Court held in *Meehan*, a third party is not *unjustly* enriched when it receives a benefit from a contract between two other parties where the party benefitted has not requested the benefit or misled the other parties. There is no evidence of record that CleveTrust either requested anything from the subcontractors or misled anyone; in fact, it did nothing more than exercise its rights under the construction loan agreement to discontinue construction installment payments and foreclose on the property. The subcontractors in this case voluntarily waived their rights to mechanics' liens and went forward without being protected by a performance bond. These decisions were business calculations which carried a certain amount of risk. It would be manifestly unfair for this Court to restructure these contractual arrangements in such a way as to place all of the risk on CleveTrust, thus insulating the subcontractors from any responsibility for their own decisions and making Cleve-Trust, in effect, the insurer of the subcontractors' interests.[5]

Reversed.

McDERMOTT, ZAPPALA and CAPPY, JJ., concur in the result.

4. Additionally, as Judge Wieand pointed out in his dissenting opinion, CleveTrust had actually advanced much more than $2,000,000 at the time of foreclosure, for in addition to the $1,903,891.13 in direct disbursements, Clevetrust also was due unpaid interest in the amount of $89,900.41 and $61,360.84 in interest on principal at the penalty rate (R. 318a). Additionally, it paid $120,921.05 in taxes and costs at the sheriff's sale and was entitled to attorney's fees and costs.

5. As Superior Court stated in *Myers–Macomber Engineers v. M.L.W. Construction Corp.*:

The legislature in Pennsylvania has by statute provided the mechanics' lien as a means by which a contractor or subcontractor can obtain security for work done. Other security can be acquired by contract. If the right to file a mechanics' lien has been waived, if a contractor chooses to rely upon the personal credit of the party with whom he contracts, a court should not rewrite the contract of the parties or legislate a right to receive payment from a mortgagee who has been compelled to go into possession to preserve its security. Such a rule would do much to impair the availability of capital upon which the building industry so greatly depends. 271 Pa.Super. at 491, 414 A.2d at 361.