Beverly ROETHLEIN and Robert Albanese, on behalf of themselves and all others similarly situated and Jerry Konidaris and Theodara G. Konidaris

v.

**PORTNOFF LAW ASSOCIATES, LTD. and Michelle R. Portnoff, Esquire, Appellants.**

Commonwealth Court of Pennsylvania.

Argued May 11, 2011.

Decided July 15, 2011.

1276

Helen L. Gemmill, Harrisburg, for appellants.

Bernard S. Rubb, Sewickley, and David A. Searles, Philadelphia, for appellees.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

Portnoff Law Associates, Ltd. and Michelle R. Portnoff, Esquire (collectively Portnoff) appeal the July 8, 2009 and November 6, 2009 orders of the Court of Common Pleas of Philadelphia County (trial court) awarding attorney's fees and expenses in the amount of $1,288,309.36 in favor of the Plaintiff Class (Taxpayers) and against Portnoff, and correcting the computation of damages from $1,588,045.65 to $1,058,697.10, respectively. Portnoff raises seven issues before the Court: (1) whether the Pennsylvania Loan Interest and Protection Law (Act 6)[1] applies to a class action to recover charges paid in connection with the collection of delinquent real estate taxes; (2) whether a private tax collector can be held liable for unjust enrichment when the charges were remitted to the municipalities, the municipalities were not parties to the action, and statutory remedies exist; (3) whether the expenses incurred in providing the required notice are recoverable from the delinquent taxpayer; (4) whether the principal of a corporation can be held liable for the acts of the corporation; (5) whether an order for an accounting is proper under the facts of this case; (6) whether delinquent taxpayers can challenge a judgment already entered in favor of the municipalities for charges and interest in a separate action to recover charges and interest; and (7) whether the prevailing party can be awarded fees incurred in connection with the claims upon which the party did not prevail, and fees unreasonably and unnecessarily incurred. For the reasons that follow, we affirm the orders of the trial court.

On November 26, 2002, taxpayer Beverly Roethlein filed a class action complaint against Dawn Schmidt, Michelle Portnoff, and Portnoff Law Associates seeking judgment for unjust enrichment and violation of Act 6. On March 11, 2008, the trial court entered an order finding for the Taxpayers and against Portnoff in the total amount of $5,213,670.08. On June 8, 2008, post trial motions were granted and the Court vacated its original order and awarded $1,588,045.65, plus statutory interest and attorneys' fees.

1. Act of January 30, 1974, P.L. 13, *as amended*, 41 P.S. §§ 101–605.

On July 8, 2009, the trial court amended its award from $1,588,045.65 to $1,058,697.10. On November 6, 2009, the trial court granted Taxpayers' motion for attorneys' fees and administrative expenses and awarded $1,267,386.25 for attorneys' fees and $20,923.11 for expenses. Portnoff appealed the July 8, 2009 and November 6, 2009 orders to this Court.[2]

Portnoff argues that Act 6 does not apply to a class action to recover charges paid in connection with the collection of delinquent real estate taxes. Specifically, Portnoff contends that Act 6 is a usury statute, and that the plain language of Act 6, case law, and the legislative history all mandate a finding that the statute's application is limited to claims in connection with loans or the use of money. Thus, Portnoff contends, Act 6 cannot be used to recover charges paid in connection with delinquent tax payments that do not involve agreements for loans or the use of money. Portnoff further contends that notwithstanding the above contentions, Act 6 only applies to actions filed by individuals, not class actions. We disagree with all of the above contentions.

Section 502 of Act 6, 41 P.S. § 502, is titled: "Usury *and excess charges* recoverable." (Emphasis added). Section 502 of Act 6 specifically states: "A person who has paid ... *charges prohibited or in excess of those allowed by ... law* may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess ... charges...." (Emphasis added). By the plain language of the statute, this action is permitted. We conclude that Portnoff was not permitted to collect adminis-trative fees or interest thereon, that the administrative fees and interest were excess charges not allowed by law, and that said charges were, therefore, recoverable under Act 6.

Further, while Section 504 of Act 6 specifically states: "Any person affected by a violation of the act shall have the substantive right to bring an action on behalf of himself individually[,]"[3] Act 6 does not preclude such individuals from complaining collectively in the form of a class action. *See Toolan v. Trevose Fed. Sav. and Loan Ass'n,* 501 Pa. 477, 462 A.2d 224 (1983) (wherein a class action suit was brought under Act 6, and the Supreme Court of Pennsylvania specifically held that the right of plaintiffs to bring their original cause of action derived from Section 504 of Act 6). Thus, Taxpayers' class action is appropriate under the law. Accordingly, the trial court did not err in allowing Taxpayers to file their action for Act 6 violations.

Portnoff next argues that a private tax collector cannot be held liable for unjust enrichment when the charges were remitted to the municipalities, the municipalities were not joined as indispensible parties to the action, and statutory remedies are available to Taxpayers. We disagree.

Initially, "[u]njust enrichment is shown by benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without

---

**2.** "This Court's standard of review of a verdict following a non-jury trial is limited to determining whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law." *M & D Props., Inc. v. Borough of Port Vue,* 893 A.2d 858, 861 n. 4 (Pa.Cmwlth.2006).

**3.** 41 P.S. § 504.

payment of value." *Filippi v. City of Erie*, 968 A.2d 239, 242 (Pa.Cmwlth.2009) (quotation marks omitted). Here, Portnoff charged a fee, paid by Taxpayers that went directly to Portnoff, not to the municipalities as claimed by Portnoff.[4] Thus, regardless of Portnoff's claim that Portnoff did not appreciate the benefits conferred by Taxpayers, the elements of unjust enrichment are clearly satisfied in this case.

▮ Regarding the issue of whether the municipalities were indispensible parties in the instant action, we note:

The criteria used to determine whether an absent party is indispensable are:

1. Do absent parties have a right or interest related to the claim?

2. If so, what is the nature of the right or interest?

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating due process rights of absent parties?

*Del. Cnty. v. J.P. Morgan Chase & Co.*, 827 A.2d 594, 598 (Pa.Cmwlth.2003). Here, the taxes owed to the municipalities are separate and distinct from the administrative fees paid by Taxpayers to Portnoff over and above said taxes. Thus, the municipalities have no right or interest in Portnoff's collected fees, and the munici-

palities were not indispensible parties to this action.

▮ Lastly, the proposed exclusive statutory remedies that Portnoff claims preclude the claim of unjust enrichment, i.e., *scire facias*, and the refund statute, do not apply. Section 16 of the Municipal Claims Act (MCA)[5] provides that a party "may file" a notice of *scire facias* where appropriate. Thus, *scire facias* is a discretionary remedy as evidenced by the use of the word "may." Moreover, according to Section 1(a) of the Tax Refund Law,[6] the refund statute specifically applies to monies actually paid to the taxing authorities, i.e., specifically paid "into the treasury of any political subdivision." The administrative fees collected by Portnoff remained with Portnoff. Thus, the refund statute is not applicable, and unjust enrichment is a viable claim. Accordingly, the trial court did not err in allowing the claim against Portnoff for unjust enrichment.

▮ Portnoff next argues that the expenses Portnoff incurred in providing the required notice are properly recoverable from a delinquent taxpayer. Specifically, Portnoff argues it is a charge, expense, or fee, incurred by the taxing authority in the collection of delinquent taxes, and that it can lawfully be recouped under the MCA. We disagree.

Section 2 of the MCA specifically states:

4. Although Michelle Portnoff testified that the administrative fees were remitted to the municipalities, the trial court clearly did not find her credible, and chose to reject her testimony.

It is well settled that the trial court, sitting as fact finder, is free to believe all, part, or none of the evidence presented, to make all of the credibility determinations, and to resolve any conflicts in the evidence. Thus, when acting as a fact finder, the trial court is free to reject even uncontradicted evidence that it finds lacking in credibility. As a result, when presented with conflicting

evidence, the trial court does not abuse its discretion nor commit an error of law by choosing to accept one party's evidence over the other party's evidence.

*Boro Const., Inc. v. Ridley Sch. Dist.*, 992 A.2d 208, 218 n. 16 (Pa.Cmwlth.2010) (citations omitted).

5. Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. § 7184.

6. Act of May 21, 1943, P.L. 349, *as amended*, 72 P.S. § 5566b(a) (commonly known as the Tax Refund Law).

All taxes which may hereafter be lawfully imposed or assessed on any property in this Commonwealth, and all taxes heretofore lawfully imposed or assessed by any municipality on any property in this Commonwealth ... shall be and they are hereby declared to be a first lien on said property, together with all charges, expenses, and fees added thereto for failure to pay promptly. . . .

53 P.S. § 7103. This Court held in *Pentlong Corporation v. GLS Capital, Inc.*, 780 A.2d 734 (Pa.Cmwlth.2001)[7] that under Section 2 of the MCA, the term "costs" specifically refers to charges, expenses or fees that "were actually incurred and could have been taxed as costs" by the taxing authority. *Id.* at 749 (stating that a tax lien assignee "is not entitled to any costs that the County did not actually incur"). Here, the administrative fee charged by Portnoff was not such a cost because the related costs, i.e., the expenses Portnoff incurred, were incurred by Portnoff directly and never incurred by the taxing authority. Accordingly, the trial court did not err in finding that the administrative fees were not recoverable from Taxpayers.

Portnoff next argues that the principal of a corporation cannot be held liable for the acts of the corporation without evidence providing a basis to pierce the corporate veil. Specifically, Portnoff contends that there was no evidence that Michelle Portnoff, in her individual capacity, collected the administrative fees, received any payments from Taxpayers or retained the fees. Further, Portnoff contends that the evidence showed that all of the collection activity was undertaken by the corporation, and that all fees collected by the corporation were remitted by the corporation to the municipalities. We disagree.

 In addition to potential liability under the doctrine of piercing the corporate veil, shareholders, officers and directors can be held liable upon the establishment of requisite factors under the "participation theory." *Com. ex rel. Corbett v. Snyder*, 977 A.2d 28 (Pa.Cmwlth. 2009). "Under the 'participation theory,' the court imposes liability on the participating individual as an actor, not as an owner. To impose liability under the participation theory, a plaintiff must establish the individual engaged in misfeasance." *Id.* at 46 (citation omitted).

 Here, Michelle Portnoff actively participated in the tax collection process at every stage. She supervised, developed and approved the collection practices of the corporation. In addition, she had personal involvement with Taxpayers, i.e., mailing correspondence to them, and preparing and filing pleadings against them, thus, establishing that Michelle Portnoff engaged in misfeasance as a participating individual. Accordingly, the trial court did not err in finding Michelle Portnoff personally liable for her actions.

Portnoff next argues that the order for an accounting was not proper. Specifically, Portnoff contends that to order an equitable accounting, a plaintiff must show there is no remedy at law. Portnoff further contends that Taxpayers could have obtained the information sought through discovery. In addition, Portnoff argues that to establish a right to legal accounting, a plaintiff must show a valid contract that imposes a legal obligation to account for monies received, and that no such con-

---

**7.** Affirmed in part, Reversed in part (on other grounds) by *Pentlong Corp. v. GLS Capital,* *Inc.,* 573 Pa. 34, 820 A.2d 1240 (2003).

tract exists. We disagree with all of the above contentions.

 "The action of account is a writ brought against one, who by means of . . . some money he has received from another, is obliged to render an account to another, but refuses to do so." *Kohr v. Kohr,* 271 Pa.Super. 321, 413 A.2d 687, 691 (1979). "Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred." *Limbach Co., LLC v. City of Phila.,* 905 A.2d 567, 575 (Pa.Cmwlth.2006). Thus, by receiving the benefit of unjust administrative fees, Portnoff is obligated to give an account. Here, Taxpayers do not know the value of the benefit conferred. We hold that they are entitled to an accounting to determine the precise amounts of interest assessed on the penalties imposed and assessed on the principal that Taxpayers paid to Portnoff. *See PNC Bank v. Kerr,* 802 A.2d 634 (Pa.Super.2002). And since the trial court properly determined that Portnoff was unjustly enriched, the law is clear that a contract is implied. Accordingly, the trial court did not err in ordering an accounting.

 Portnoff next argues that delinquent taxpayers cannot challenge the judgments already entered in favor of the municipalities for charges and interest in a separate action to recover charges and interest. Specifically, Portnoff contends that the municipalities sued Taxpayers under *scire facias* for unpaid taxes; thus, the judgment against Taxpayers in that case precludes this litigation under the doctrine of res judicata. We disagree.

Res judicata will preclude a court from considering a second identical application for relief. . . . In order to apply, a litigant must establish the identity of four elements in the matter for which the relief is sought:

(1) Identity of the thing sued for;

(2) Identity of the cause of action;

(3) Identity of persons and parties to the action; and

(4) Identity of the quality in the persons for or against whom the claim is made.

*Dubois Dutch, LLC v. Sandy Twp. Bd. of Supervisors,* 940 A.2d 576, 580 (Pa. Cmwlth.2007). While the thing sued for in the prior cases involving the municipalities was unpaid taxes, here the thing sued for was administrative fees and interest thereon. The cause of action in the prior cases was *scire facias,* while in the present case it involves Act 6 violations and unjust enrichment. Finally, since Portnoff was not a party in the prior cases, there is no identity of persons and parties, and no identity of quality of persons. Thus, res judicata is not applicable on the facts at hand. Accordingly, the trial court did not err in its determination that Taxpayers were not precluded from bringing this action.

Lastly, Portnoff argues that the prevailing party cannot be awarded counsel fees incurred in connection with the claims upon which the party did not prevail, and fees unreasonably and unnecessarily incurred. Specifically, Portnoff contends that Taxpayers previously lost on their key issue, thus recovering about 20% of the damages originally sought: in fact, the award of attorneys' fees was 240% of the compensable damages awarded. In addition, Portnoff contends that the trial court awarded fees that were unreasonably and unnecessarily incurred because the case should have been stayed while one of the issues was on appeal, but Taxpayers opposed the stay and wasted a majority of the trial trying to prove a cause of action that became moot when the appeal was final. We disagree with all of Portnoff's contentions.

As noted, Taxpayers brought the instant action pursuant to Act 6. Under that act, the award of attorneys' fees is mandatory. Section 503 of Act 6, 41 P.S. § 503. Moreover, whenever attorneys' fees are awarded, Pa.R.C.P. No. 1716 is implicated.

 Pa.R.C.P. No. 1716 specifically states:

> In all cases where the court is authorized under applicable law to fix the amount of counsel fees it shall consider, among other things, the following factors:
>
> (1) the time and effort reasonably expended by the attorney in the litigation;
>
> (2) the quality of the services rendered;
>
> (3) the results achieved and benefits conferred upon the class or upon the public;
>
> (4) the magnitude, complexity and uniqueness of the litigation; and
>
> (5) whether the receipt of a fee was contingent on success.

Here, the trial court took all of these factors into consideration. The starting point for awarding fees is the lodestar method which consists of multiplying reasonable fees by reasonable hours expended. *See Dep't of Envtl. Res. v. PBS Coals, Inc.*, 677 A.2d 868 (Pa.Cmwlth.1996). The reasonableness of the hourly rate of counsel for Taxpayers was not contested. Counsel spent seven years, and thousands of hours, litigating this class action suit. That stated, the award of attorneys' fees was appropriate under the law. Accordingly, the trial court did not err in its award of attorneys' fees.

For all of the above reasons, the orders of the trial court are affirmed.

President Judge LEADBETTER did not participate in the decision in this case.

### ORDER

AND NOW, this 15th day of July, 2011, the July 8, 2009 and November 6, 2009 orders of the Court of Common Pleas of Philadelphia County are affirmed.

### DISSENTING OPINION BY Judge LEAVITT.

The majority affirms a class action judgment against a tax collector based upon Act 6 [1] violations and unjust enrichment. Act 6, a usury statute, has zero application to a municipality's collection of delinquent taxes, and unjust enrichment is not available where there is a written contract governing the parties' conduct. To otherwise hold, the majority has accepted plaintiffs' strained legal theories. I cannot and, respectfully, dissent.

Portnoff Law Associates and Michelle Portnoff (together Portnoff) appeal two orders of the Court of Common Pleas of Philadelphia County (trial court) directing Portnoff to pay a total of $2,347,006.46 in damages and attorneys' fees to a certified class of delinquent taxpayers.[2] Portnoff is in the business of collecting taxes for municipalities and school districts located throughout the Commonwealth. Delinquent Taxpayers sued Portnoff for collecting fees in excess of the delinquent taxes owed. Specifically, Delinquent Taxpayers asserted that Portnoff improperly passed

---

1. Act of January 30, 1974, P.L. 13, *as amended*, 41 P.S. §§ 101–605.

2. Plaintiffs, Beverly Roethlein, Robert Albanese, Jerry Konidaris, and Theodara Konidaris (together Delinquent Taxpayers) represent a class of taxpayers whose property taxes were delinquent and whose municipalities had contracted with Portnoff for their collection. The class was certified to cover all property owners in the Commonwealth who received communications regarding delinquent taxes from Portnoff, and ultimately amounted to over 16,000 taxpayers.

the municipality's attorney fees and administrative fees for Portnoff's collection of delinquent taxes along to Delinquent Taxpayers.

Initially, Delinquent Taxpayers prevailed and were awarded damages and attorneys' fees in the amount of $5,213,670.08. However, the act commonly referred to as the Municipal Claims and Tax Lien Act [3] (MCTLA) was then amended, with a retroactive effective date, to authorize municipalities to recover their attorney fees and costs of collection from their delinquent taxpayers.[4] The retroactive effective date of January 1, 1996, eviscerated Delinquent Taxpayers' first judgment, which covered Portnoff's collections in years 2000–2002.[5]

On remand, the trial court removed the attorney fees from the original judgment. This left a $35 fee that Portnoff charged municipalities to open a file and give notice, by certified mail, to taxpayers. The municipalities contracted to pay Portnoff this fee. For example, Portnoff's contract with the Allentown City School District to recover delinquent real estate taxes states:

> School District agrees to enact any and all resolutions required by state law to impose the legal fees set forth herein upon the delinquent property owner. *School District hereby retains Portnoff* to provide all delinquent property owners with the notice as required by Act 1

of 1996 *at a cost of $35.00 per notice.* This administrative expense shall be paid to Portnoff Law Associates by the School District. *The School District may charge this expense to the taxpayer and be reimbursed upon payment by the delinquent taxpayer.*

Reproduced Record at 364a (R.R. ——) (emphasis added). As set forth in the contract, the $35 fee covered the notices required by the MCTLA, verifying the property owner and address, postage for certified mailings, review of delivery receipts and, in some cases, setting up a payment plan with the delinquent taxpayers.

The trial court held that the $35 fee was actionable and awarded damages. This award began with the $510,855 in administrative fees that Portnoff collected from Delinquent Taxpayers and added $18,493.55 in interest. The court then doubled that total, *i.e.* $529,348.55, in accordance with Section 502 of Act 6. This resulted in total damages of $1,058,697.10. The trial court then granted Delinquent Taxpayers' motion for all attorney fees incurred.[6] The trial court awarded Delinquent Taxpayers $1,267,386.25 in attorney fees and $20,923.11 in costs. The total of the two judgments was $2,347,006.46.

Portnoff challenges the award in its entirety. Portnoff observes that the

---

**3.** Act of May 16, 1923, P.L. 729, *as amended*, 53 P.S. §§ 7101–7505.

**4.** In *Konidaris v. Portnoff Law Associates, Ltd.*, 598 Pa. 55, 953 A.2d 1231 (2008), the retroactive amendment was held constitutional.

**5.** The exact class year ran from November 27, 2000, to November 26, 2002.

**6.** Delinquent Taxpayers requested $1,838,461 in attorney fees, using a lodestar approach. The trial court reduced it to $1,267,386.25. Portnoff argues that the trial court's award of attorney fees was excessive because most of

Delinquent Taxpayers' attorney fees were incurred in advancing claims Delinquent Taxpayers failed to prevail on such as, *inter alia,* their argument that Portnoff illegally shifted its attorneys fees onto Delinquent Taxpayers, which was adjudicated in our Supreme Court's decision in *Konidaris v. Portnoff Law Associates, Ltd.,* 598 Pa. 55, 953 A.2d 1231 (2008). Thus, Portnoff argues the trial court's award of attorney fees does not accurately reflect what was actually incurred by Delinquent Taxpayers to recover the $35 administrative fee collected by Portnoff.

MCTLA specifically allows municipalities to recover fees they incur in the collection of unpaid taxes, including the $35 fee charged by Portnoff. As such, Portnoff properly collected the $35 fee from Delinquent Taxpayers on behalf of the municipalities. In any case, Portnoff argues that Act 6 simply does not apply to tax collection matters. Because the $35 fee was a matter of contract between Portnoff and the municipalities, Portnoff argues that Delinquent Taxpayers cannot bring an unjust enrichment claim. In no case, Portnoff asserts, can Delinquent Taxpayers pursue the agent of the municipalities, Portnoff, without including the municipalities as necessary and indispensable parties. I agree.

Act 6, the *Loan* Interest Protection Law, enacted a wide-ranging regulatory regime for the stated purpose of establishing "a flexible maximum lawful interest rate for residential mortgages ... [tied to] the Monthly Index of Long Term United States Government Bond Yields...." Section 301 of Act 6, 41 P.S. § 301.[7] Act 6 focuses on mortgage loans, but it also limits the interest a lender can charge a borrower on any loan. Act 6 regulates settlement and finance charges, lest these charges be used as a vehicle to exceed the maximum rate of interest allowed in Act 6. For example, Act 6 limits the charges that can be imposed on a borrower to those specified in the definition of "actual settlement costs."[8] Act 6 does not make any reference to the administrative "charges" a municipality can pay a tax collector and then recover from a delinquent taxpayer.

Act 6 is simply irrelevant to Delinquent Taxpayers' quest for justice.

To argue otherwise, Delinquent Taxpayers rely upon Section 502 of Act 6, which states:

A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges; Provided, that no action to recover such excess shall be sustained in any court of this Commonwealth unless the same shall have been commenced within four years from and after the time of such payment. *Recovery of triple the amount of such excess interest or charges, but not the actual amount of such excess interest or charges, shall be limited to a four-year period of the contract.*

41 P.S. § 502 (emphasis added). There are numerous problems with Delinquent Taxpayers' reliance upon Section 502.

First, Section 502 does not create a cause of action for a violation of Act 6, let alone another statute, such as the MCTLA. All Section 502 does is authorize triple damages, assuming a cause of action under Act 6. The cause of action is created by Section 504 of Act 6, and it states:

*Any person affected by a violation of the act shall have the substantive right to*

---

7. Portnoff notes this intent by pointing to the legislative history of this Act and noting that Senator Zemprelli stated "[t]his bill was intended as a mortgage interest bill." Portnoff's Brief at 21 (citing Pa. Senate Journal, January 15, 1974, p. 1334).

8. Generally, Section 101 allows "reasonable" charges for things such as insurance and a

title search to be charged to a borrower as "actual settlement costs." 41 P.S. § 101. However, it specifically limits the amount of a "service charge" to be no more than "one percent of the original bona fide principal amount of the loan, except ... in the case of a construction loan, [which] shall not exceed two percent[.]" *Id.*

bring an action on behalf of himself individually for damages by reason of such conduct or violation, together with costs including reasonable attorney's fees and such other relief to which such person may be entitled under law.

41 P.S. § 504 (emphasis added). Here, there was no violation of Act 6. This is because nothing in Act 6 makes it unlawful to over-charge a taxpayer for costs associated with the collection of his delinquent taxes. Absent a violation of Act 6, there is nothing to redress in a Section 504 action and no damages to triple in accordance with Section 502.

Second, the operative language in Section 502 is "for the loan or use of money." This means that treble damages are available where a person has paid: (1) a rate of interest in excess of that allowed in Act 6 *in connection with the loan or use of money;* or (2) paid any charges that were either prohibited or in excess of those allowed in Act 6 *in connection with the loan or use of money.* Delinquent Taxpayers simply disregard this opening clause "for the loan or use of money."

Third, Delinquent Taxpayers' action for overpayment of tax collection charges cannot be reconciled with Section 503 of Act 6, which authorizes a debtor, who brings an action for a violation of Act 6, to recover attorney fees. Section 503 states:

(a) If a *borrower or debtor, including but not limited to a residential mortgage debtor,* prevails in an action arising under this act, he shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on his behalf in connection with the prosecution of such action, together with a reasonable amount for attorney's fee.

(b) The award of attorney's fees shall be in an amount sufficient to compen-sate attorneys representing *debtors* in actions arising under this act. . . .

(c) Any time attorneys' fees are awarded pursuant to any provision of this act, a *borrower or debtor* shall not be entitled to duplicate recovery of attorneys' fees. . . .

41 P.S. § 503 (emphasis added). Act 6 creates rights for borrowers and debtors. A delinquent taxpayer is not a "borrower" or a "debtor," as assumed by the trial court.

The terms "debt" and "debtors" are terms of art. Long ago our Supreme Court explained that:

Every debt of course is an obligation, *but every obligation is not a debt.* . . . A debt is a sum or money due *by contract,* express or implied. But *a tax is not a debt.* It is not founded upon contract. *It does not establish the relation of debtor and creditor between the taxpayer and the [governmental entity].*

*In re Moorehead's Estate,* 289 Pa. 542, 553, 137 A. 802, 806 (1927) (emphasis added) (citations omitted). A debt arises from a contract; indeed, Section 502 of Act 6 refers, specifically, to the "period of the [loan] contract." 41 P.S. § 502. A tax, as explained by our Supreme Court, does not arise from a contract, and a delinquent taxpayer is not a "debtor" within the meaning of Act 6.

In short, Section 502 did not create a cause of action by which Delinquent Taxpayers could pursue their tax collector. Delinquent Taxpayers take one phrase in Section 502 and run far afield with it. Their expansive read of the phrase "charges . . . in excess of those allowed by this act or otherwise by law" in Section 502 to create a cause of action against a tax collector, as opposed to a lender, cannot be harmonized with the rest of Section 502, let alone the rest of Act 6. Section 502 does

not give every Pennsylvania citizen who has paid a charge in excess of any charge established in any statute or ordinance in Pennsylvania a cause of action under Act 6, which does not even purport to regulate the costs of pursuing delinquent taxes. Rather, the purpose of Act 6 is to establish "a flexible maximum lawful interest rate for residential mortgages." Section 301 of Act 6, 41 P.S. § 301. It is not a violation of Act 6 for a municipality to pay a tax collector a $35 fee to set up a file, and it is not a violation for the municipality to recover that fee from the taxpayer.

In any case, even if one accepts the creative notion that Section 502 establishes a cause of action to recover fees paid in excess of those allowed in any Pennsylvania statute, ordinance or regulation, it does not apply to the $35 fee in question. This is because the MCTLA expressly authorized that fee. The MCTLA defines "charges" to mean "all sums paid or incurred ... to file, preserve and collect unpaid taxes." Section 1 of the MCTLA, 53 P.S. § 7101. The MCTLA then states that a municipality may recover any "charges, expenses, and fees" it incurs in the collection of delinquent taxes as payment to its tax collectors. *Id.* The MCTLA does not specify the amount of "charges, expenses, and fees" that can be recovered by a municipality, but it provides that such "charges, expenses, and fees" must be reasonable. *Id.* Delinquent Taxpayers presented no evidence whatsoever to prove that the $35 charge was unreasonable.

Nor does Delinquent Taxpayers' unjust enrichment theory work. Unjust enrichment, or quasi-contract, cannot be invoked where parties have a written contractual agreement. *Third National Bank &*

Trust Co. of Scranton v. Lehigh Valley Coal Co.*, 353 Pa. 185, 193, 44 A.2d 571, 574 (1945). The contract between Portnoff and the municipalities was the basis for the $35 fee, and the contract must be the basis of any damage action. The contract also specified that the municipality's $35 fee could be recovered from the taxpayer. A contract that violates statute or public policy may be void or voidable. But Delinquent Taxpayers do not challenge the enforceability of the contract. Instead, they assert that Portnoff retained the $35 fee and did not remit it to the municipality. If so, the municipality may have a breach of contract claim against Portnoff, but the taxpayers do not.[9]

To advance a claim for unjust enrichment, benefits must have been conferred under circumstances where the receipt and retention of those benefits is inequitable. *See Konidaris v. Portnoff Law Associates, Ltd.*, 884 A.2d 348, 355 (Pa.Cmwlth.2005), *reversed on other grounds*, 598 Pa. 55, 953 A.2d 1231 (2008). An unjust enrichment defendant must *receive and retain* a benefit. *Id.* The burden of proving the receipt and retention of benefits lies with the plaintiff, here the Delinquent Taxpayers. *Commonwealth ex rel. Pappert v. TAP Pharmaceutical Products, Inc.*, 885 A.2d 1127, 1137 (Pa.Cmwlth.2005).

Delinquent Taxpayers did not prove Portnoff retained any benefit. Michelle Portnoff testified that the municipalities paid the $35, as required by their contract. Portnoff built that fee into the amount collected from the Delinquent Taxpayers. Ms. Portnoff also testified that whenever the $35 fee was collected, it was remitted to the municipality. The trial court did not credit her testimony. However, not

---

9. The fact that Delinquent Taxpayers were *not* a party to the contract does not open the door to unjust enrichment. *See D.A. Hill Co. v.*

CleveTrust Realty Investors*, 524 Pa. 425, 434, 573 A.2d 1005, 1010 (1990).

crediting testimony does not constitute substantial evidence to prove the opposite, *i.e.*, that Portnoff retained the $35 fee. *See Yi v. State Board of Veterinary Medicine*, 960 A.2d 864, 875 (Pa.Cmwlth.2008). Because Delinquent Taxpayers did not prove that Portnoff retained the $35 fee recovered from Delinquent Taxpayers, it did not prove Portnoff received any benefit, which is the *sine qua non* of unjust enrichment.[10]

Even if Portnoff did retain the $35 fee, instead of remitting it to the municipalities, this does not mean that the fee should be paid to Delinquent Taxpayers. By contract, those fees are owed to the municipalities. There is nothing "just" about awarding Delinquent Taxpayers monies that, as a matter of contract, are owed to the municipalities by Portnoff. The law does not correct one wrong by creating a second wrong.

All of this underscores the reason why the municipalities had to be parties to the litigation. Failure to join an indispensable party deprives the Court of subject matter jurisdiction and is fatal to a cause of action. *Polydyne, Inc. v. City of Philadelphia*, 795 A.2d 495, 496 (Pa.Cmwlth.2002). A party is considered "indispensable" if their rights are "so connected with the claims of the litigants that no decree can be made without impairing those rights." *Id.* (quoting *Vernon Township Water Authority v. Vernon Township*, 734 A.2d 935, 938 n. 6 (Pa.Cmwlth.1999)). Most particularly, it violates due process to adjudicate claims that compromise the rights of the absent party. *Montella v. Berkheimer Associates*, 690 A.2d 802, 803 (Pa.Cmwlth. 1997). If Portnoff holds monies owed to the municipalities, then the judgment here deprives the municipalities of their ability to recover those fees from Portnoff. The municipalities are indispensable parties.

Tax collectors have been reviled since their profession was established. *See, e.g., Matthew* 9:9–13 (New International Version) (explaining the Pharisees' view that tax collectors were "sinners" to be shunned at dinner parties). However, the law must be followed even when it is hard to do so. To allow Delinquent Taxpayers to use Act 6 in the manner authorized by the majority is error and will produce unintended consequences. Judge Roy Wilkinson, Jr., one of the original judges of this Court and a justice of the Pennsylvania Supreme Court, once cautioned, "If we throw away the law to beat the Devil, what shall we use as a shield when he turns on us?" *Hilton v. State Employees Retirement Board*, 23 Pa.Cmwlth. 639, 353 A.2d 883 (1976) (Wilkinson, Judge, dissenting) (quoting a statement attributed to Sir Thomas More).

Indeed.

I would reverse.

---

**10.** In *Konidaris*, the Supreme Court upheld the General Assembly's retroactive amendment to the Municipal Claims and Tax Liens Act. The $35 fee covered the notice requirements in the MCTLA. The retroactive amendment allowed municipalities to recover their attorney fees and other costs incurred to collect unpaid taxes. The majority relies upon a cryptic quote from *Pentlong Corp. v. GLS Cap-ital, Inc.*, 780 A.2d 734 (Pa.Cmwlth.2001), *affirmed in part, reversed in part*, 573 Pa. 34, 820 A.2d 1240 (2003), to hold the $35 not an allowable charge under the MCTLA. *Pentlong* stated that allowable charges are "taxed as costs." The majority does not explain why the $35 fee is not an allowable fee "taxed as a cost."